```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                            18-cr-16 (RJS)

AKAYED ULLAH,

                  Defendant.

------------------------------x
                                          New York, N.Y.
                                          January 11, 2018
                                          3:05 p.m.

Before:

              HON. RICHARD J. SULLIVAN

                                          District Judge


                         APPEARANCES

GEOFFREY S. BERMAN
      Interim United States Attorney for the
      Southern District of New York
BY:   GEORGE D. TURNER, ESQ.
      SHAWN G. CROWLEY, ESQ.
      REBEKAH A. DONALESKI, ESQ.
      Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK INC.
      Attorneys for Defendant
BY:   AMY GALLICCHIO, ESQ.
      JULIA L. GATTO, ESQ.
```

1              (In open court)
2              THE CLERK:  This is 18-cr-16, United States v. Ullah.
3              THE COURT:  Have a seat.  Thank you.
4              Good afternoon.  Let me take appearances from the
5     lawyers.  For the government.
6              MR. TURNER:  Good afternoon, your Honor.  George
7     Turner, Shawn Crowley, and Rebecca Donaleski for the
8     government.
9              THE COURT: Yes.  All right.  Good afternoon.
10             And for the defendant.
11             MS. GALLICCHIO:  Good afternoon, your Honor.  Federal
12    Defenders by Amy Gallicchio, with Julia Gatto, on behalf of
13    Mr. Ullah.
14             THE COURT:  OK.  Ms. Gallicchio, Ms. Gatto, good
15    afternoon.  Mr. Ullah, good afternoon to you.
16             We are here, this is our initial appearance following
17    the return of an indictment by the grand jury.  The grand jury
18    returned an indictment, I think yesterday it was.  Is that
19    correct?
20             MR. TURNER:  That's correct, your Honor.
21             THE COURT:  All right.  So, Mr. Ullah, I want to first
22    make sure that you've seen a copy of the indictment and you
23    have had a chance to look at it and review it with your
24    attorneys.  So have you seen the indictment in this case?
25             THE DEFENDANT:  Yes.

1            THE COURT:  You have, all right.  And have you had a
2    chance to discuss it with your attorneys, Ms. Gallicchio and
3    Ms. Gatto?
4            THE DEFENDANT:  Yes.
5            THE COURT:  Do you think you have had enough time to
6    discuss it with them?
7            THE DEFENDANT:  Yes.
8            THE COURT:  Would you like me to read it out loud here
9    in court?
10           THE DEFENDANT:  No.
11           THE COURT:  No.  You read it yourself.  You understand
12   it.
13           There are six counts, I believe, in the indictment.
14   You've said you've read them.  And so at this point I'm going
15   to ask you to tell me your plea.  I'm going to ask you whether
16   you plead guilty or not guilty to the charges in the
17   indictment.  OK?
18           So how do you plead?  Guilty or not guilty?
19           THE DEFENDANT:  At this moment, not guilty.
20           THE COURT:  Not guilty.  All right.
21           So that's the formal arraignment in this case on the
22   charges.
23           The next purpose, I guess, of today's meeting, today's
24   conference, is to discuss the evidence in this case.  As a
25   defendant in a criminal case, you're entitled to certain

1   evidence that the government has in its possession.  And so I'm
2   going to ask the government lawyers to summarize for me what
3   that evidence consists of and where you are in terms of
4   producing it to counsel for Mr. Ullah.
5            MR. TURNER:  Yes, Judge.  The discovery materials in
6   this case will consist largely of materials, including the
7   following: surveillance video, including surveillance video
8   showing the defendant detonating an explosive device on the day
9   of the alleged attack; photographs of evidence recovered at the
10  crime scene, including components of the detonated pipe bomb
11  recovered from the defendant's body and the surrounding area;
12  post-arrest statements made by the defendant; FBI lab reports,
13  for example, reports regarding analysis of DNA, fingerprints,
14  and explosives; multiple search warrants and search warrant
15  returns, specifically search warrant returns for two social
16  media and messaging applications used by the defendant; as well
17  as photos, logs, and other reports relating to the execution
18  and results of searches conducted pursuant to search warrants
19  of three physical locations during the course of the
20  investigation, including the defendant's residence; the
21  contents of a laptop that was seized from the defendant's
22  residence and was used by the defendant; subpoena returns, for
23  example, subscriber-related information for e-mail, social
24  media, and other online accounts used by the defendant, as well
25  as financial records, travel records, such as MetroCard data,

1    showing the defendant's movements on the morning of the attack,
2    phone records.  And those are some of the principal categories
3    of discovery, Judge.
4            THE COURT:  Have you produced anything to date to
5    defense counsel?
6            MR. TURNER:  Not to date, Judge.  Earlier today we did
7    provide defense counsel with a proposed protective order.  We
8    are prepared to begin producing discovery as soon as tomorrow,
9    subject to the entry of the protective order.  We would be
10   prepared to provide the bulk of discovery, as we've informed
11   defense counsel, within the next two weeks.  And we anticipate
12   being in a position to complete rolling productions of Rule 16
13   materials in the next 30 days, your Honor.
14           THE COURT:  All right.  How voluminous is this stuff?
15   If you printed it all out and stacked it all up, how high are
16   we going?
17           MR. TURNER:  Your Honor, I think it's fair to say that
18   the materials in this case are substantial but that the
19   government does not view them as voluminous, to use your
20   Honor's word.  This is not a case that involves, for example,
21   hours and hours of undercover recordings or e-mail search
22   warrant after e-mail search warrant.  The materials are
23   significant, but we would not characterize them as voluminous,
24   your Honor.
25           THE COURT:  Could you say in terms of numbers of

1   pages?  Hundreds?  Thousands?  What?
2           MR. TURNER:  Your Honor, in terms of hard-copy
3   documents, I don't have an exact count for your Honor, but we
4   are talking more in the range of hundreds than thousands, your
5   Honor.
6           THE COURT:  All right.  So, Ms. Gallicchio or
7   Ms. Gatto, I don't know if this is the first time you're
8   hearing this or you had a hunch as to what was coming, but
9   hearing what I just heard, do you have a sense as to how long
10  it would take you to review those things?
11          MS. GALLICCHIO:  Yes.  I did get indication from the
12  government about the nature of the discovery.  And I'm thinking
13  that it might be wise at this point to start with a 90-day
14  period to review the discovery once received.
15          THE COURT:  All right.  And in terms of the protective
16  order, I don't know what you folks have in mind on that.
17          MS. GALLICCHIO:  I haven't taken a look at it yet.  I
18  haven't opened my e-mail today since it was sent.  My sense is
19  it is not going to be a problem.  We'll sign that and get it to
20  the government.
21          THE COURT:  All right.  So you think 90 days to review
22  these materials and then come back to me and tell me what
23  motions you are contemplating.
24          MS. GALLICCHIO:  Yes.  I think that's a starting
25  point.  I understand that the bulk of the discovery will get to

1    us in a couple weeks.  So maybe a little beyond 90 days, from
2    when we receive it.
3             THE COURT:  It doesn't sound that voluminous to me.
4    Obviously they are very serious charges.
5             MS. GALLICCHIO:  Right.
6             THE COURT:  But it doesn't sound like it's a
7    voluminous amount of discovery.
8             MS. GALLICCHIO:  I mean, it's hard to tell.  But I
9    think that is a reasonable amount of time.
10            THE COURT:  All right.  What does the government
11   think, in terms of 90 days?  It's longer than I would normally
12   want to put off seeing a defendant.
13            MR. TURNER:  Judge, we don't have any objection to
14   that proposal.
15            THE COURT:  All right.  So 90 days puts us into April.
16            So Friday, April 13, at 11 a.m. we'll come back for
17   another conference.  At that point I'll expect that defendants
18   will be ready to tell me what motions they're contemplating.
19   If it looks like we are still off in the weeds and you're not
20   ready, I'd like an update then.  Think we'll still have the
21   conference.  But I'd like to have an update telling me what's
22   taking longer than you thought or what the complications are.
23            MS. GALLICCHIO:  What did you say, your Honor?  The
24   13th?
25            THE COURT:  The 13th, yes, at 11 a.m.  And then let's

1    plan on it being here.  I think this is a convenient courtroom
2    as courtrooms go.  If that changes I'll let you know.  OK?
3              MS. GALLICCHIO:  Thank you.
4              Your Honor, there are a couple issues I'd like to
5    raise just with respect to Mr. Ullah's medical treatment.
6              THE COURT:  Sure.  All right.
7              MS. GALLICCHIO:  He recently had some stitches
8    removed, but my understanding is there are still stitches that
9    remain and may be embedded in his skin, causing him a great
10   deal of discomfort.  He needs additional medical attention and
11   treatment and potentially treatment outside of the MCC medical
12   facility.  Also, his wound is still dressed, but my
13   understanding is, his dressing has not been seen or changed in
14   several days.
15             So I would ask the Court to issue an order that he
16   receive immediate medical attention upon return to the MCC,
17   particularly with respect to the dressing on his wound and the
18   stitches that still remain in his body.
19             THE COURT:  Well, I don't know.  Generally speaking I
20   think it's best to go through the Bureau of Prisons on this.
21   He's at the MCC, right?
22             MS. GALLICCHIO:  He's at the MCC.  They haven't seen
23   him in four days.
24             THE COURT:  Have you contacted the MCC about this?
25             MS. GALLICCHIO:  I just learned about that this

1  morning.

2  THE COURT: Yes. Generally speaking, I think the best
3  thing to do is to have counsel endeavor to do this with the
4  Bureau of Prisons in the first instance. I think that they are
5  very receptive. At least the wardens have assured me they are
6  and will be. So I would reach out to chief counsel there to
7  see if you can get those things addressed through them. If
8  not, then you can propose something to me, but with more
9  specifics, just because it's hard for me to say, oh, yes, we've
10 got to change those stitches or change those dressings. I
11 don't know enough about any of it. So obviously I want
12 Mr. Ullah's medical needs attended to, of course. But I think
13 I'll need more information before I'm going to order specific
14 treatment or specific activity on the part of --

15 MS. GALLICCHIO: No, I'm not asking the Court to order
16 that, obviously, but just that he be seen by someone. He has
17 not had a doctor examine him in several days. So that would be
18 the first request that I would have. But if the Court is not
19 inclined to do that at this point, I will pursue, of course,
20 through the legal department.

21 THE COURT: Yes. Generally you come to me after
22 you've tried that and it's failed. But if you're just finding
23 out about these things now, my expectation is that you reach
24 out to Bureau of Prisons, or maybe the government could do the
25 same, that you should be able to get the relief you're seeking

1  pretty quickly.  If that turns out to be wrong, then you come
2  back to me.
3               MS. GALLICCHIO:  All right.
4               THE COURT:  Anything else you wanted to raise with me
5  today?
6               MS. GALLICCHIO:  No, your Honor.  That's it.
7               THE COURT:  All right.  Government, anything else you
8  think we need to consider or discuss today?
9               MR. TURNER:  No, other than an application for the
10 exclusion of time, your Honor.
11              THE COURT:  You're asking that I exclude time between
12 now and April the 13th under the Speedy Trial Act?
13              MR. TURNER:  That's correct, your Honor.  And among
14 other reasons, it will enable defense counsel to review the
15 discovery to be produced by the government and assess the need
16 for potential motions.
17              THE COURT:  No objection to that?
18              MS. GALLICCHIO:  No objection, your Honor.
19              THE COURT:  Mr. Ullah, let me explain what this means.
20 Your lawyer may have done this already.  But ordinarily you
21 have a right to a speedy trial -- rephrase that -- you have a
22 right to a speedy trial.  Ordinarily what that means is that
23 you would have your trial within 70 days of the indictment, so
24 70 days from yesterday.  That's not a lot of time.  That's less
25 than two and a half months.  However, the law recognizes that

1   not all cases are the same.  Some are more complicated.  Some
2   involve more evidence, more discovery, may require more time.
3   And so the law allows a judge like me to extend that period of
4   time if there is a good reason.  Or if you think of it another
5   way, like if you think of it as sort of a stopwatch that is
6   ticking, it's got 70 ticks on it, one for each day, I'm free to
7   stop that clock if there's a good reason to stop it.
8           Now, it seems to me that there is a lot of evidence
9   that you and your attorneys will want to review.  There may be
10  motions you wish to make.  Some of those materials are already
11  being produced very quickly.  Some will come in over time.  So
12  it sounds like your interest in a Speedy Trial and the public's
13  interest in a Speedy Trial is outweighed by your need to review
14  these materials.  So I am inclined to stop the clock between
15  today and April 13th to allow you to review these things and
16  discuss them with your attorneys, and then also discuss what
17  motions if any you want to make related to the evidence in the
18  case.
19          Now, I am mindful of the fact that you probably want
20  to move quickly, and there is a public interest in moving
21  quickly.  But we have to balance that need for speed with the
22  need to give you an opportunity to prepare your defense.
23          So from what I've heard, the 90 days sounds
24  reasonable.  So I'm going to stop the clock between now and
25  April 13th.  However, if for whatever reason you think you need

1     to see me between now and then, tell your attorneys.  They will
2     contact chambers, and we will schedule a conference here in
3     court.  All right?
4              THE DEFENDANT:  All right.  Thank you.
5              THE COURT:  So I will exclude time.  I find, in the
6     interests of justice, that is appropriate under the statute,
7     under the Speedy Trial Act, 18 U.S.C. 3161.
8              All right.  So I'll see you in April if not before.
9     Keep me apprised if there are any changes in circumstances.
10             Let me ask this question:  How long a trial, if we go
11    to trial, do you expect this case to be, Mr. Turner?
12             MR. TURNER:  May I have one moment, your Honor?
13             THE COURT:  Yes.
14             MR. TURNER:  At this point, your Honor, we would
15    estimate a trial of one to two weeks.
16             THE COURT:  OK, so not a long trial.  All right.  That
17    was my hunch.  That would be what I would expect.  You agree?
18    You haven't seen the discovery yet.
19             MS. GALLICCHIO:  I agree.
20             THE COURT:  Sounds right.
21             MS. GALLICCHIO:  Yes.
22             THE COURT:  OK.  So we can schedule a trial quickly.
23    If at the next conference everybody wants to move fast, we can
24    move quickly at that point.
25             All right.  So thank you very much.  Let me thank the

I1BAULLApc

1  marshals.  Let me thank the court reporter as well.  Have a
2  nice day.
3            MR. TURNER:  Thank you, your Honor.
4            THE COURT:  Thank you.
5                              o0o