```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

            v.                            18 Cr. 16 (RJS)

AKAYED ULLAH,
                                          Conference
                 Defendant.

------------------------------x

                                          New York, N.Y.
                                          April 17, 2018
                                          2:10 p.m.


Before:

             HON. RICHARD J. SULLIVAN,

                                          District Judge

                        APPEARANCES

GEOFFREY S. BERMAN
     Interim United States Attorney for the
     Southern District of New York
SHAWN CROWLEY
GEORGE TURNER
     Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK
     Attorneys for Defendant
BY:  AMY GALLICCHIO
     JULIA L. GATTO


Also Present:  John Maurer, FBI
```

1              (Case called)

2              THE COURT: Good afternoon. Let me take appearances
3  for the government.

4              MS. CROWLEY: Good afternoon, your Honor, Shawn
5  Crowley and George Turner for the government. Joining us at
6  counsel table is Special Agent John Maurer from the FBI.

7              THE COURT: Good afternoon. Thanks.

8              For the defendants.

9              MS. GALLICCHIO: Good afternoon, your Honor, the
10 Federal Defenders by Amy Gallicchio. With me is Julia Gatto on
11 behalf of Mr. Ullah.

12             THE COURT: Good afternoon to each of you.

13             We were last here on January 11. At that time we
14 discussed what the discovery was in the case and a schedule for
15 production, and I put this over for 90 days so that defense
16 counsel and the defendant could review the discovery materials
17 and would then be in a position today to let me know what
18 motions, if any, they were contemplating.

19             Can you inform me of that, Ms. Gallicchio?

20             MS. GALLICCHIO: Yes, your Honor. What I would like
21 to say is, however, with respect to the discovery, which of
22 course we have been reviewing, we are still in the process of
23 reviewing discovery. We have to date, I believe since the last
24 court appearance, received four discovery productions. One of
25 the productions was on February 12, 2018, and that was a fairly

1    massive production of electronic information and it was
2    designated as sensitive material, which presents its own
3    complications, and it does include the imaging of a cell phone
4    and a laptop.
5             The data in both of those items together is
6    approximately 1,097 video files which we estimate to be about
7    263 hours of video.  A lot of that video is in Bengali and
8    Arabic, which requires the services of an interpreter when we
9    are reviewing the video.  The review of that discovery has been
10   quite intensive and it's a very substantial amount of
11   information.
12            Because it's sensitive material, also, although we did
13   work out a compromise with respect to the cell phone data, most
14   of that material is sensitive material and that Mr. Ullah is
15   not entitled to have that material with him to review on his
16   own.  That material has to be reviewed in the presence of
17   members of the defense team.  As you can imagine, that has also
18   rather burdensome, but we have been doing that.  I will say
19   that we have really just scratched the surface of that volume
20   of information.
21            There are complications.  I will say that the legal
22   department of the Bureau of Prisons has been nothing but
23   helpful and accommodating in that respect.  Any time we have
24   had difficulties we have reached out to them and they have
25   helped us solve that.  That's not the complication.  But there

1  are complications that are beyond anyone's control, including
2  times when the jail is locked down, including room space to
3  review that material where Mr. Ullah had been housed previously
4  until I think Friday.  He was in the special housing unit,
5  which has approximately I think four interview booths, only one
6  of which has the electric equipment that we need to review
7  discovery with him.
8           THE COURT:  He is not there anymore?
9           MS. GALLICCHIO:  As of Friday he is not there anymore.
10 Our ability now to review discovery will be easier.  However,
11 he still is not in possession of those thousands of videos that
12 need to be reviewed with him.  But I think it will be easier
13 for us to continue that review with him.
14          By saying that, your Honor, I would say there is still
15 a lot that we need to do in terms of preparation and review,
16 certainly, before we can let the Court know what direction we
17 think this case will take.  Just in terms of setting a motion
18 schedule, we certainly can set one, but we would ask for a very
19 lengthy period of time for us to set a motion schedule because
20 certainly, as I said, we don't know what direction this case is
21 taking.
22          I also will add to that, your Honor, that because of
23 where he had previously been housed until Friday Mr. Ullah
24 really had only spoken to his family twice, and he has not had
25 one single visit, personal visit with a family member, for a

1    variety of complications, particularly related to where he is
2    housed.
3         Obviously the decisions that need to be made in this
4    case are very important and very serious.  He is facing a
5    substantial period of incarceration, a mandatory minimum of 37
6    and a half years and a possibility of the maximum of life in
7    prison.  And he has not had an opportunity to even discuss,
8    certainly on the phone he has not, to discuss all of his
9    options with his family members, and I think it's critical that
10   he have the opportunity to do that.
11        THE COURT:  That may be.  I'm just trying to get a
12   handle on what sort of motions we are thinking about.
13   Understanding that you have additional materials to review and
14   perhaps additional motions that you would want to make once you
15   review them, what motions are you thinking about now?
16        MS. GALLICCHIO:  Your Honor, what I can say at this
17   point, I believe there are several statements.  We certainly
18   would be filing a motion to suppress statements, at a minimum.
19        THE COURT:  That's statements made following arrest?
20        MS. GALLICCHIO:  Yes.  And possibly, your Honor, we
21   are exploring the possibility of filing a motion for a change
22   of venue.
23        THE COURT:  Anything else?
24        MS. GALLICCHIO:  At this point, no.  But obviously
25   without foreclosing the possibility of other motions that we

1  may decide are appropriate.

2           THE COURT:  You think it's going to take you 90 days

3  to review the balance of the materials?

4           MS. GALLICCHIO:  I would say at a minimum, yes.

5  Conservatively, I think, yes.

6           THE COURT:  Let me hear from the government.

7           Ms. Crowley.

8           MS. CROWLEY:  Yes.  Thank you, your Honor.

9           We believe that a shorter motion schedule is

10 appropriate at this time.  The defense has been in possession

11 of all of the materials that could form the basis of the

12 motions that they have just outlined since January 18, when we

13 made our first production.

14          THE COURT:  I thought she said that there was a

15 production February 12 which was voluminous.

16          MS. GALLICCHIO:  Yes.  That was not the last

17 production.  There was one on February 21 which was minimal.

18 But February 12 was the production that I said was massive.

19          MS. CROWLEY:  Yes, your Honor.  I apologize if I'm not

20 being clear.  What I meant was, just given the motions that

21 Ms. Gallicchio just said she is considering filing a motion to

22 suppress and a motion to change venue, we produced to the

23 defense on January 18, among other things, all of Mr. Ullah's

24 statements, recordings of those statements, and reports of

25 those statements made to law enforcement following his arrest.

1    In addition, on that date we produced all of our search warrant
2    applications and affidavits to the extent there are motions
3    concerning those as well.
4            THE COURT:  What Ms. Gallicchio is saying is, if there
5    is a lot of material that they have not gone through yet.  We
6    could do motions on two tiers, motions now based on what's
7    already been reviewed with additional motions potentially to
8    follow.  We could do it that way.
9            The downside of doing it that way is that the time
10   spent writing the first-tier motions would be time that might
11   otherwise be used to evaluate the discovery that hasn't yet
12   been reviewed.  I think there are arguments that could go
13   either way on this.  If there is going to be two waves of
14   motions, it's probably not efficient to do it that way, it
15   would seem to me.  If there is a chance that 90 days from now
16   Ms. Gallicchio is going to come back and say, we had nothing
17   new.  We have all the same motions that we mentioned in April,
18   then we will have missed perhaps an opportunity to move this
19   more quickly.  It's hard for me to know.  I just don't know
20   what the nature of the materials are and what sort of motions
21   they might generate.
22           You know the material better than I do, Ms. Crowley.
23   What do you think?  You think it is unlikely there will be
24   additional motions from the materials that have not yet been
25   reviewed?

1    MS. CROWLEY:  Your Honor, the only motion that I can
2 think of with respect to the laptop in particular, which I
3 believe is the item that is the most voluminous, would be a
4 motion to suppress the search warrant for Mr. Ullah's residence
5 as the laptop was seized during that search.  Again, the
6 defense has been in possession of the affidavit and application
7 for that search warrant since January, so they have had it for
8 four months.
9    THE COURT:  That's not one of the ones you mentioned
10 about suppressing the laptop.
11    MS. GALLICCHIO:  No, that's not.  It was a search
12 warrant, and so I am not sure whether having reviewed the
13 search warrant materials it is something that we will be
14 filing.  Again, I think it's a work in progress.  We are
15 discussing what would be the appropriate motions to file in
16 this case, your Honor.
17    What I would ask, and I understand the concern, the
18 Court's concern, the government's concern.  But we certainly
19 would like a fuller, better understanding of what the discovery
20 is before we make decisions.  I think 90 days is reasonable
21 rather than a two-tier filing schedule.  I think that should
22 give us sufficient time.
23    THE COURT:  The problem is, if 90 days from now you
24 come back and say, I am going to file the same motions I just
25 told you about and none others, then we are going to have to

1   then build out a motion schedule and we will have potentially

2   lost some time, right?

3              As long as you are not prejudiced from making an

4   additional motion or motions on the materials that you have not

5   yet reviewed, I don't see that you would be prejudiced.  But

6   there might be some upside to doing it in two tiers just

7   because you know there are some motions now you want to file.

8   You have what you need to file those motions.  And it allows, I

9   think, at least the Court to get into some of the substantive

10  motions rather than just sort of sitting on ice for another 90

11  days.  I think there are some advantages to it.

12             MS. GALLICCHIO:  Right.  Obviously, there is a lot to

13  do.  Our filing motions certainly does take time away from our

14  ability to meet with our client and our ability to review

15  additional discovery.  We have had the case only four months.

16  To me that does not seem a long time.

17             THE COURT:  I am not sure how complicated a case it

18  is.  The charges don't look that complicated.  It really turns

19  on what the discovery is.  It sounds very voluminous.  I don't

20  know as much as you do, since you've had a chance to review the

21  materials.

22             MS. GALLICCHIO:  We are continuing to review the

23  materials, and so I think it's reasonable.  I think 90 days is

24  not an exorbitant amount of time to ask, and I think it's

25  reasonable under the circumstances and under the nature of the

1    charges and certainly the stakes that are involved.

2        THE COURT: Ms. Crowley.

3        MS. CROWLEY: Yes, Judge. I think we would prefer to
4    have one tier of motions. We understand that defense needs a
5    little bit more time to review discovery. We think 90 days is
6    too far, so perhaps we could compromise.

7        THE COURT: What is your basis for saying that 90 days
8    is too much? Ms. Gallicchio knows what she needs to review
9    still. Why do you think that 90 days is an excessive amount of
10   time for her and Ms. Gatto to review those materials?

11       MS. CROWLEY: Judge, perhaps I can add some clarity as
12   to what we believe is on the laptop and the phone that have
13   been discussed.

14       With respect to the phone, that was originally
15   classified as sensitive material, which means Mr. Ullah could
16   not review it without his attorneys. Defense came to us and
17   ask that we reconsider that designation. We did. We removed
18   16 files that we believed should remain sensitive and then
19   provided Mr. Ullah with the rest of the phone. I don't think
20   that that's an issue anymore.

21       MS. GALLICCHIO: I'm sorry. He hasn't received it
22   yet. He still needs to review that.

23       THE COURT: It will be faster than it was before.

24       MS. GALLICCHIO: If he has it in his possession, yes.

25       MS. CROWLEY: In addition, the filings that are on the

1   phone are largely irrelevant to the case.  They are photographs
2   of family members, they are text messages.  We don't view them
3   as being anything that we would rely on at trial, with the
4   exception of a Facebook post and the 16 videos that I just
5   mentioned.
6            With respect to the laptop, there are numerous videos,
7   thousands of video files.  However, it's a subset of those
8   files, perhaps hundreds, that, again, we view as relevant to
9   the case and something that we would introduce as evidence at
10  trial.  Those videos include dozens of ISIS propaganda videos,
11  Anwar al-Awlaki's Hereafter lecture series and 100 to 200
12  Hadiths or lectures by other radical Islamic leaders.  While
13  there are thousands of files on the computer, again, many of
14  them consist of school work, family photographs and of
15  materials that are just not relevant to this case.
16           THE COURT:  That's helpful.  I am not sure it makes
17  Ms. Gallicchio or Ms. Gatto's job any easier because they may
18  have a different view as to what's relevant than you, and I
19  think probably they feel they need to go through each one of
20  these.
21           You have gone through each one of the videos that's on
22  the laptops and the phone?
23           MS. CROWLEY:  Yes, your Honor.  We or the FBI.
24           THE COURT:  I don't know that they can do less than
25  that or they would want to do less than that.  Since you are

1    not asking to do this in a two-tiered motion process, I guess

2    I'm now inclined to give Ms. Gallicchio what she wants,

3    although I do really want to get this going.  Remember, Mr.

4    Ullah is in custody.

5             MS. GALLICCHIO:  I understand, your Honor.  We have

6    had lengthy discussions with him about this request.  He's

7    obviously in agreement that he wants the opportunity to review

8    all of those files.

9             THE COURT:  90 days would put us into the middle of

10   July.  I'm inclined to have you file motions in 90 days.

11            MS. GALLICCHIO:  That's fine.  Yes.

12            THE COURT:  Once I get the motions, we can either have

13   a conference to talk about it or see what they are and then we

14   will know the length of time to respond.

15            Based on what you've heard so far, how long is it

16   going to take you to respond?

17            MS. CROWLEY:  Three weeks, your Honor.

18            THE COURT:  We can build out a schedule that does

19   that.  If you think you need more time in light of additional

20   motions being made, then you can request that.  Now we have at

21   least something to point to.

22            Let me just look at the calendar.  July 17 will be the

23   date for motions.  Government's response to motions, August 7.

24   And then a reply, if I give you 10 days that's enough for a

25   reply.

1           MS. GALLICCHIO:  Yes, your Honor.
2           THE COURT:  That's the 17th, which is a Friday.  Then
3    let's schedule a conference for -- are you guys around in
4    August?  Do you know your schedules?
5           MS. CROWLEY:  We will be, your Honor.
6           THE COURT:  We could do before Labor Day, if that
7    helps.  Let's say Friday, August 30.
8           MS. GALLICCHIO:  That's Thursday.
9           THE COURT:  I'm sorry.  Thursday, August 30.  I don't
10   want to do the Friday.  Is that Labor Day?  Labor Day is early
11   this year.
12          MS. GALLICCHIO:  Yes.  That is Labor Day weekend.
13          THE COURT:  If we can do the 30th, maybe that's
14   better.
15          MS. GALLICCHIO:  That's fine.
16          THE COURT:  The 30th at 2:30.  Is that all right?
17          MS. GALLICCHIO:  Yes, your Honor.
18          THE COURT:  Depending on what I get, it may be that
19   it's obvious we need to have a hearing or that we will need to
20   have more time than just the afternoon.  If that's the case, I
21   will reschedule or make adjustments.  That at least gives us a
22   firm set of dates that gives us something to hang our hats on.
23   That's what we will do.  I will issue an order that
24   memorializes those dates.
25          Anything else we should discuss today?

1   MS. CROWLEY:  Yes, your Honor.  I believe your Honor
2   indicated at the last conference that your Honor would be
3   inclined to set a trial date.
4   THE COURT:  I think if we have got the motions made by
5   the mid summer and resolved by Labor Day or late September at
6   the latest, I think we can pick a trial date for sometime in
7   October or November.
8   MS. CROWLEY:  That's fine for the government.
9   MS. GALLICCHIO:  Your Honor, I would prefer and we
10  would prefer at this point, instead of booking our schedules at
11  this point, before we even have decisions about what direction
12  the case is going, that we set a trial date at the next
13  conference.
14  THE COURT:  I'm worried we are not going to have a
15  next conference until after the all the motions are in.  That
16  would be August or September.  I just worry things will fill
17  up.  My schedule for the fall is pretty wide open right now.
18  We can always move it, but I think it's easier to move things
19  back if you need to than to squeeze time out once it's already
20  been booked.
21  How long a trial?  What are we thinking for length of
22  a trial?
23  MS. CROWLEY:  Your Honor, between one and two weeks.
24  THE COURT:  I'll block two weeks.  We can do this.
25  MS. GALLICCHIO:  If I can have a moment, your Honor.

1            THE COURT:  Sure.  Columbus Day is the 8th.  We can do
2    the 9th or the 15th of October.
3            MS. GALLICCHIO:  Your Honor, we are thinking that
4    might be a bit soon.  We are just discussing date suggestions,
5    your Honor.
6            THE COURT:  OK.
7            MS. GALLICCHIO:  Your Honor, we actually would prefer
8    a date in early December, sometime after the Thanksgiving
9    holiday, just in terms of the amount of work that obviously is
10   required to prepare for this trial.  That would be our request,
11   for an early December date.
12           THE COURT:  I would rather not do December just
13   because December you run into all kind of travel issues with
14   jurors.  That's why October you've got a big window before
15   anybody sort of runs into trouble.
16           Ms. Crowley, do you have a view?
17           MS. CROWLEY:  Your Honor, we believe October is open.
18   It works for us.
19           THE COURT:  Let's say October 29.  That's as late as I
20   will go in October.  It buys you a couple more weeks.  That way
21   we don't run into Thanksgiving.  We will have plenty of time
22   before Thanksgiving.  The only holidays we have to worry about
23   are Veterans Day, which is November 12.  We might be done by
24   then anyway.  That's a Monday this year.
25           MS. GALLICCHIO:  That's the 12th.

1         THE COURT:  If it's a two-week trial, we will be done
2    by then.  I don't think we have to worry too much.  I think the
3    29th would work.
4         At next conference I will set a schedule for pretrial
5    submissions.  What I would envision is that the government,
6    probably 30 days or more before trial, would be submitting its
7    motions in limine, its 404(b) notice, its witness and exhibit
8    lists.  The defense would have a week or 10 days to respond to
9    the motions *in limine* and to make their own motions.  If you
10   know you're putting on a case, then your own exhibit list and
11   witness list.
12        I would give the government probably a week or maybe
13   five days to respond to the defense motions and then around
14   that same time ask the parties to submit a joint proposed voir
15   dire and a joint proposed requests to charge.  Then we would
16   have a final pretrial conference probably about 10 days before
17   the trial.  I'll work all that out.  We don't have to nail that
18   down today.  But that's the basic timeline that I would
19   envision.
20        I don't know how much 3500 material there is in this
21   case.  It may not be that much.  I might be wrong.  Generally,
22   I can't order the government to produce that in advance of
23   trial, but they typically will when asked, and I would hope
24   that you would.  I would think a week before trial would be
25   sufficient for that.

1      MS. GALLICCHIO: I just want to raise one other thing
2  that I raised with the government this morning, is that I
3  believe there is additional discovery that still is to be
4  turned over.
5      We did receive laboratory reports, final reports, from
6  certain laboratory scientific testing, and we have not received
7  the full case files or the results and other tests underlying
8  those reports.
9      We would be asking that the government turn over all
10 the work that led up to those reports. I think the government
11 indicated that they intended to file those at the time they
12 were filing expert notices, but I think under Rule 16 we are
13 entitled to those now.
14     THE COURT: See if you can work it out. If you can't,
15 that's a motion that you should make as part of your motions on
16 the 17th of July.
17     MS. CROWLEY: Yes. Thank you, your Honor.
18     THE COURT: Anything else we should cover?
19     MS. CROWLEY: Yes, your Honor. The government moves
20 to exclude time between today and October 29, 2018, pursuant to
21 Title 18, United States Code, Section 3161(h)(7)(A), to allow
22 the defense to continue reviewing discovery, to file motions
23 that they consider appropriate, and to allow the parties to
24 prepare for trial.
25     THE COURT: Any objection to that?

1               MS. GALLICCHIO:  No, your Honor.

2               THE COURT:  Mr. Ullah, I told you before, but I want

3    to remind you, you have the right to a speedy trial, which

4    typically would mean within 70 days of the indictment.  We are

5    already past that.  But that's because the law recognizes that

6    not all cases are alike and some are more complicated and time

7    consuming than others.  So the law allows a judge like me to

8    extend that 70 day-period.  If you think of it another way, the

9    law allows me to sort of stop the clock like it's a stopwatch

10   with.  If you thought of it as there being a stopwatch with 70

11   days on it, I could stop it so that the days don't tick off if

12   there is a good reason.

13              Here, it sounds to me like you and your lawyers are

14   reviewing a lot of materials.  There is a lot there and that

15   takes time and it's obviously in your interests to review those

16   materials and discuss with your attorneys what the materials

17   are and how it affects your case.

18              You also want to discuss with your attorneys and

19   perhaps with your family motions that you might want to make.

20   We have talked a little bit about that today.  Motions take

21   some time and deciding what motions to make also takes some

22   time.  Those are all legitimate reasons to extend the period or

23   to stop the clock.  But even past the motions it takes some

24   time to prepare a case also, to prepare for the witnesses, to

25   prepare for the defense that you would be putting on.  That

1  also takes some time.

2              It seems to me that your interests in a speedy
3  trial -- and I think you obviously have an interest in a speedy
4  trial, you're in custody -- but also the public's interest in a
5  speedy trial is outweighed by the need for you to review these
6  materials with your attorneys to make the motions you feel you
7  need to make and to prepare for trial.  I am going to stop the
8  clock between today and October 29, and be assured that day you
9  will go to trial, if that's something you wish to do.

10             In the interests of justice I'll exclude the time
11 between now and October 29.  I'll do a minute entry that just
12 memorializes the dates for the motions.  Once I have the
13 motions, I'll schedule a conference probably in probably early
14 September, late August -- I already did that.  August 30.
15 Never mind.  If I need to move it, I will let you know.

16             Let me thank the court reporter.  Let me thank the
17 marshals and everybody else.  Have a good day.

18                              o0o