I8V5ullA

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,                  New York, N.Y.

4              v.                             18 Cr. 16 (RJS)

5  AKAYED ULLAH,

6              Defendant.

7  ------------------------------x

8                                             August 30, 2018
                                              2:50 p.m.
9

10 Before:

11                  HON. RICHARD J. SULLIVAN,

12                                            District Judge

13

14                      APPEARANCES

15 GEOFFREY S. BERMAN
        United States Attorney for the
16      Southern District of New York
   BY:   SHAWN G. CROWLEY
17       REBEKAH A. DONALESKI
         GEORGE D. TURNER
18       Assistant United States Attorneys

19 FEDERAL DEFENDERS OF NEW YORK
        Attorneys for Defendant Ullah
20 BY: AMY GALLICCHIO

21

22

23

24

25

I8V5ullA

1          (Case called)

2          THE COURT:  Appearances for the government.

3          MR. TURNER:  Good afternoon, your Honor.  George

Turner, Shawn Crowley, and Rebekah Donaleski for the

government.

6          THE COURT:  Good afternoon to each of you.

7          And for the defendant?

8          MS. GALLICCHIO:  Good afternoon, your Honor.  Federal

Defenders by Amy Gallicchio for Mr. Ullah.

10          THE COURT:  Yes.  Okay.  Ms. Gallicchio, Mr. Ullah.

11          THE DEFENDANT:  How are you.

12          THE COURT:  Good afternoon to you.

13          I apologize for making you all wait.  I had a witness

on the stand who was being cross-examined, and you hate to stop

and come back with a witness who is in the middle of cross.  So

we wrapped it up, but I'm sorry to make you wait, you have

other things to do, I know.

18          So, we are here in connection with the defendant's

motion to dismiss Count Six of the indictment, and so I have

the parties' briefs, I have reviewed the cases, and I think

what I would be inclined to do is have oral argument with

Ms. Gallicchio going first, it is her motion.

23          How is the sound?  I feel like it is very reverby.

24          MS. GALLICCHIO:  It is fine.

25          THE COURT:  It is not too bad?  Okay.

I8V5ullA

1              So, I will have Ms. Gallicchio go first and then have

2     the government respond.  Who is going to be carrying the ball

3     for the government?

4              MR. TURNER:  I will, your Honor.

5              THE COURT:  Since it is your motion, Ms. Gallicchio, I

6     will give you opportunity to respond to that.  I will probably

7     have questions throughout.  And then we will see where we are.

8     Okay?

9              MS. GALLICCHIO:  Okay.

10             THE COURT:  You can do it there or at the lectern,

11    whatever you prefer.  Just try to keep near the microphone,

12    okay?

13             MS. GALLICCHIO:  Maybe I will go to the microphone, it

14    might be easier.

15             THE COURT:  Sometimes it is if you have papers.

16             Go ahead.

17             MS. GALLICCHIO:  Thank you, your Honor.

18             So, your Honor, in our papers we move to dismiss Count

19    Six of the indictment pursuant to Rule 12 of the Federal Rules

20    of Criminal Procedure.

21             THE COURT:  And that's the count that has a 30-year

22    mandatory consecutive, if there were a conviction?

23             MS. GALLICCHIO:  That's correct, your Honor.

24             And we move pursuant to Rule 12 for failing to state

25    an offense.  Count Six, of course, does charge 924(c).  An

I8V5ullA

1   element of a crime, of course, must be charged in the

2   indictment.  924(c) criminalizes the use of a deadly weapon

3   during, and in relation to, or in furtherance, of a crime of

4   violence.

5        It is our position is that it is a combination crime.

6   The crime of violence must be a separate crime of violence.

7   Count Six is predicated on Counts One through Five which, it is

8   our position, are not separate and distinct crimes of violence

9   and, therefore, Count Six fails to state an offense and should

10  be dismissed.

11       We also raise, in our papers, your Honor --

12       THE COURT:  You think that Count One wouldn't count?

13  Wouldn't make a combination?  Or is your argument with Count

14  One different?

15       MS. GALLICCHIO:  Our argument with respect to Count

16  One is different.  Count Six is predicated on One through Five,

17  but our argument with respect to Count One is different.

18       THE COURT:  That's what I thought.

19       MS. GALLICCHIO:  And I will raise that later, as I

20  will with respect to, as we stated in our papers, Counts One

21  Two and Four, I believe, which it is our position that under

22  the current state of the law, particularly in light of or

23  actually in light of *Sessions v. Dimaya*, are no longer crimes

24  of violence under the elements clause of 924(c), but I will

25  address that second.

I8V5ullA

1          THE COURT:  Okay.

2          MS. GALLICCHIO:  So, your Honor, with respect to

3     924(c), as we have stated in our papers, it is our position

4     that 924(c) requires a separate and distinct crime of violence

5     separate from the use of, as the statute says, a firearm, which

6     of course is also, can also be an explosive device or a bomb.

7          So, any person, according to 924(c) who, during and in

8     relation to a crime of violence, uses or carries a firearm, or

9     in furtherance of any such crime, possesses a firearm.  The

10    Supreme Court has clearly held that 924(c) has two distinct

11    conduct elements and those cases which clearly outlie that

12    principle are the two United States Supreme Court cases *United*

13    *States v. Rodriguez Moreno* from 1999 and *Rosemond v. United*

14    *States* from 2014.

15         In *Rodriguez v. Moreno*, which address the underlying

16    crime of kidnapping in relation to 924(c), the Court held that

17    we interpret 924(c) to contain two distinct conduct elements.

18    It criminalizes a defendant's use of a firearm during and in

19    relation to a crime of violence and in Rosemond, equally, the

20    Court, in 2014, made it very clear that 924(c) is a combination

21    of statutes consisting of two separate actions -- an underlying

22    crime of violence and a distinct use of a firearm in

23    furtherance of that crime.  It is not using a bomb while using

24    a bomb.  It is not possessing a gun while possessing a gun.  In

25    fact, Justice Kagan, in the decision, made clear that 924(c)

I8V5ullA

1    does not cover something like simply firing a gun in the park.

2    Because it is a combination crime it punishes, as the Court

3    said, the temporal and relational conjunction of two separate

4    acts on the ground that they, together, pose an extreme risk of

5    harm.

6            So, 924(c) was written to be an aggravated punishment,

7    right, for a crime that's made worse by the use of a firearm.

8    The substantive crimes here, Counts Two through Five, require

9    the use of a bomb and can't be committed without a bomb.  They

10   require the use of a bomb and can't be made worse by the use of

11   a bomb.  924(c) was not written to cover what is essentially a

12   bombing alone.

13           The government's position essentially weeds out the

14   language of during and in relation to a crime of violence in

15   their position that the two separate acts required by the

16   Supreme Court does not exist.

17           THE COURT:  Why is that true with respect to Count

18   Five?  Terrorist attack against mass transportation systems,

19   which that one basically it is not limited to bombs, it is a

20   range of activities that include, in some cases, just using a

21   dangerous weapon which might even be a knife or a hammer.

22           Right?

23           MS. GALLICCHIO:  Well, I think that with respect to --

24   Mr. Ullah has been charged under several subsections of that

25   offense, right, so I think in all of those subsections it is

I8V5ullA

```
1    required that either a destructive device is an element of that

2    offense, is the conduct, is the actual conduct that encompasses

3    that offense.  And so, it is our position that Count Five also,

4    with respect to 924(c), is not a separate and distinct crime of

5    violence.

6              Your Honor, the government has not pointed to any --

7              THE COURT:  Well, (7).  1992(a)(7) makes it a crime

8    when a person commits an act including the use of a dangerous

9    weapon with the intent to cause death or serious bodily injury.

10   So.

11             MS. GALLICCHIO:  Right.  Well, here, the conduct

12   alleged in this case is the use of a bomb.  Right?

13             THE COURT:  There is a categorical approach to all of

14   this, right?  So --

15             MS. GALLICCHIO:  Well, no.

16             THE COURT:  You said -- let me interrupt you.  Sorry.

17             You are likening this to a crime of using of a bomb

18   and getting an enhancement that involves using a bomb while

19   using a bomb.

20             MS. GALLICCHIO:  Right.

21             THE COURT:  But I do think that Count Five can be

22   distinguished, certainly from the others in this indictment and

23   from the example you have used, or Justice Kagan used, because

24   Section 7 doesn't talk about using a bomb.  It talks about

25   using a dangerous weapon.
```

I8V5ullA

1          MS. GALLICCHIO:  Right.

2          Well, I am not talking about here, your Honor, a

3    categorical approach.  That would be if we were analyzing this

4    offense as whether it is actually a crime of violence.  We are

5    talking about Count Five here, we are analyzing is it separate

6    and distinct, whether it is crime of violence or not, separate

7    and distinct from the use of a weapon, right?  Which is what

8    924(c) requires.  And the conduct element with respect to

9    Section 7 of 1992 is the use of a weapon and therefore that is

10   a conduct element and is not separate and distinct from what

11   924(c) prescribes.

12         Your Honor, I think 924(c), the government's

13   interpretation is not supported.  The government's

14   interpretation that these two acts' requirement do not exist is

15   not supported by any case law or in the Second Circuit.  924(c)

16   was written for crimes aggravated by the use of a firearm, not

17   for crimes that were completed by the use of a firearm.

18         As the Supreme Court held in, it was in 1998 in

19   Muscarello v. United States, 924(c) was written, generally, to

20   persuade a man who has attempted to commit a federal felony to

21   leave his gun at home.  These crimes cannot be committed by

22   leaving a bomb at home.

23         Your Honor, I think also our position is supported by,

24   as we have stated in our papers, several canons of construction

25   which I will just address briefly here.  In particular, the

I8V5ullA

1    Court must give effect to all the words of the statute and the

2    government's construction reads out the words during and in

3    relation to a crime of violence and I think that their position

4    is ignoring the controlling case law on that issue.

5         Additionally, your Honor, if there is a tension

6    between a general statute, which 924(c) is, and specific ones,

7    which Counts Two through Five are, the specifics ones should

8    control.  Congress has clearly -- has clearly -- set out

9    various statutes that cover the actions that are simply

10   alleging that a bomb was used as Counts Two through Five do.

11   Congress has set out specific penalty provisions, many of which

12   allow for a sentence up to life and some include a mandatory

13   minimum.  So, the penalty provisions for these charges are very

14   severe.  While one of them, I believe, does call for mandatory

15   minimum, certainly not near 30 years, however there is the

16   possibility of life in prison for these offenses regardless of

17   any mandatory minimum.

18        If Congress, it is our position, had wanted to import

19   924(c), the mandatory minimum into the punishment schemes for

20   the bombing offenses, they would have.  924(c), your Honor,

21   these crimes were all enacted after 924(c) was amended to

22   include the 30 year mandatory minimum.

23        924(c) was not written for this situation and I think

24   it is important, if we look at some of the language in 924(c)

25   also, it is very informative.  In particular, when the

I8V5ullA

amendment took place, the language that says any person who,
during or in relation to a crime of violence or a drug
trafficking crime, including a crime of violence or drug
trafficking crime that provides for an enhanced punishment if
committed by the use of a deadly weapon or dangerous device.
So, I think that's actually very informative because it makes
very clear that we are talking about an underlying offense that
additional penalties could be imposed even if the underlying
offense is committed while using a firearm and that's just
simply not the case here.  The crimes here, the underlying
crimes here, the alleged predicate offenses of Two through
Five, they don't carry an enhanced punishment for using a
weapon or a dangerous instrument or bomb because they require
the use of it.

THE COURT:  They don't require the use of a bomb,
right?

MS. GALLICCHIO:  Well, yes, they do.

THE COURT:  Well, again, let's go to Count Five, which
is 18 U.S.C. 1992(b).

MS. GALLICCHIO:  Sorry.  Which subsection, your Honor?

THE COURT:  (b).  (b)(1), which makes it a crime to
engage in a terrorist attack against a mass transportation
system by placing or attempting to place a destructive
substance and destructive device in, upon, and near a variety
of different facilities.

I8V5ullA

1          MS. GALLICCHIO:  Did you say 1992(b)(1)?

2          THE COURT:  I think it is (b)(1).  I am reading from

3     the indictment now.

4          MS. GALLICCHIO:  I think (b)(1) is an aggravated

5     offense.

6          THE COURT:  My point is you are saying there is

7     duplicity here.  You are saying using a gun --

8          MS. GALLICCHIO:  We are not talking about duplicity,

9     your Honor.  We are talking about -- that's not our argument

10    and that is sort of what the government has tried to couch our

11    argument in, in one of duplicity and one of double jeopardy.

12    That's not our argument here.  We are alleging a defect in the

13    indictment, a failure to plead an element of the 924(c) count

14    which is an underlying crime of violence, other than the use of

15    a bomb.

16         So, I will turn to double jeopardy because that is

17    what the government's opposition focuses on and the cases that

18    they cite *Mohammed*, *Salameh*, and *Khalil*, all address the

19    question of all with respect to the issue of multiple

20    punishments.  Right?  And the implications that it has for

21    double jeopardy.

22         Your Honor, that is not the issue that we are raising

23    here and those cases did not address the question that's raised

24    here by Mr. Ullah and they cannot be said to have decided it as

25    a result.  The issue was never raised.

I8V5ullA

1        In *United States v. Mohammed*, your Honor, that case

2   involved a car jacking as a predicate offense to 924(c), that

3   was a Second Circuit case in 1994.  That certainly has a

4   separate offense conduct, a car jacking.  It did involve a

5   situation in which, I'm sorry, 2119, which was the car jacking

6   statute at the time, did have a firearms element to it.  It no

7   longer does.  But, it is a separate and distinct crime of

8   violence.  So*, Mohammed* really has no application here.

9        *United States v. Salameh*, your Honor, did charge an

10  underlying offense of 844(i), in fact actually 844(i)

11  conspiracy and an assault, I believe, on a federal Secret

12  Service agent as underlying predicate crimes of violence.

13        Count Four also charges 844(i) but, in *Salameh*, the

14  charge there was a conspiracy to commit 844(i), your Honor, and

15  conspiracy is quite different.  Conspiracy does have other

16  conduct elements that is not simply using a destructive device

17  and it is separate and distinct from the use of a bomb.  And in

18  that case the Court held, in *Salameh*, that the imposition of a

19  separate 924(c) sentence is not defeated by the fact that

20  violent crimes underlying the 924(c) conviction themselves

21  provide for enhancement penalties.

22        That's the ruling in that case.  Right?  That's not

23  the conversation, that's not our position, that's not our

24  question here.

25        And also in Khalil, your Honor, that also, that

I8V5ullA

involved 924(c) with a 2332(a) conspiracy charge, which is the
same thing that is charged -- well, what is charged in Count
Two, not a conspiracy, the actual substantive offense.  So,
again, I think we are talking about different conduct element
when we are talking about a conspiracy.  And, in *Khalil*, the
Court said that there is no doubt that 924(c) describes a
firearms offense that is distinct from the underlying crime of
violence in connection with which the firearm was carried or
used.  And I think what is also important about these cases, in
particular *Salameh* and *Khalil*, is that they address underlying
predicate offenses which our position is, now, are no longer
crimes of violence.

        And so, your Honor, we are alleging -- we are not
alleging a violation of double jeopardy or alleging duplicity.
We are alleging a defect in the indictment, a failure to plead
an offense, plead an element of 924(c).  Our argument is that
the 924(c) count is missing the element of a separate and
distinct underlying crime of violence.

        This issue has, was litigated last year before Judge
Berman in the case of *United States v. Rahimi*, this very
motion, this very issue with respect to 924(c), and in denying
the motion Judge Berman stated that the criminal charges which
have been sustained in cases analogous to *Rahimi* compel this
result.  The cases that the Court points out are far from
analogous.

I8V5ullA

1          I have already addressed, essentially the Court listed

2     and cited to five cases, *Khalil* and *Salameh* were two of them,

3     which I have already addressed.  The other three were *U.S. v.*

4     *Dye*, which is a Sixth Circuit case, *United States v. Garcia*,

5     which is an Eastern District decision -- sorry District Court

6     decision in the Eastern District of California.

7          THE COURT:  It was affirmed in the Ninth Circuit.

8          MS. GALLICCHIO:  I'm sorry.

9          THE COURT:  And was affirmed in the Ninth Circuit.

10         MS. GALLICCHIO:  Yes.

11         THE COURT:  And *United States v. Smith*, which is a

12    Second Circuit case.  Your Honor, those cases all involve

13    questions of multiplicity and double jeopardy arguments.

14    Again, that is not the argument we are making here, your Honor,

15    and in particular *United States v. Garcia* honestly doesn't

16    really even address the issue.  That's a question about the

17    844(i) count itself and there was a claim that that count

18    itself, because it charged two separate bombings, was

19    duplicitous in and of itself, and the Court found in that case

20    that it was a conjunctive pleading style which they approved

21    of.

22         So that case itself doesn't really even come close to

23    being analogous.  And again, your Honor, all of those cases,

24    those three cases, aside from *Khalil* and *Rahimi*, relate to the

25    underlying predicate offense of 844(i), which I will discuss in

I8V5ullA

a moment, it is our position is no longer a crime of violence
and in fact the Tenth Circuit has said so in *United States v.*
*Salas*.  So, your Honor, we don't think that the decision in
*Rahimi* gives any guidance to the Court and the cases are simply
not analogous to the case here.

So, I'm going to turn now to the question of the crime
of violence, if I may, your Honor.

THE COURT:  Residual cause.

MS. GALLICCHIO:  Yes.  Exactly.

So, we have pointed out that it is our position that
certainly Count One, charging provisional material support to a
foreign terrorist organization, Count Two, use of a weapon of
mass destruction, and Count Four, destruction of property, are
no longer crimes of violence in light of *Sessions v. Dimaya*.

Your Honor, I am sure you are very familiar with
*Sessions v. Dimaya*, declares, of course, 18 U.S.C., 16(b)
impermissibly vague in violation of the Due Process Clause of
the Fifth Amendment.  It is our position that that invalidates,
effectively, the residual clause of 924(c)(3)(B) because it has
the identical language.

THE COURT:  Identical language, yes.

MS. GALLICCHIO:  The Tenth Circuit, as I just said, in
*United States v. Salas* has so held.  To quote, *Dimaya* compels
the conclusion that 924(c)(3)(B) is unconstitutional.  And I
think the reasoning is very sound.  That leaves us with the

I8V5ullA

1    elements clause, right?  And the elements clause states that a

2    crime of violence means an offense that is a felony that has an

3    element, the use, attempted use, or threatened use of physical

4    force against a person or property of another.

5          So, that leads us to the categorical approach.  To

6    determine if an offense is a crime of violence under the

7    elements clause, which I submit is the only clause remaining,

8    the Courts use the categorical approach which has not been

9    abandoned by the Supreme Court or the Second Circuit.

10         So, the government, in their papers do advocate for

11   the survival of the residual clause and suggest that *Dimaya*

12   permits that and permits the application of an underlying

13   conduct approach in the 924(c) context.

14         Your Honor, as we have stated in our papers, that

15   position, that argument is not supported at all by *Dimaya*.

16   There is no doubt that *Dimaya* confirms the residual clause of

17   924(c) is void for vagueness; exact same language, exact same

18   reasoning.  The residual clause of 916(b) and 924(c)(3)(B), are

19   identical.  There is nothing in *Dimaya* that casts doubt on the

20   well established rule in the Second Circuit that the

21   categorical approach applies to 924(c) in general.  And on the

22   contrary, your Honor, with respect to what *Dimaya* holds despite

23   what the government argues, the Court expressly denied the

24   defense request in that case to abandon the categorical

25   approach the same way it did in *Johnson*.

I8V5ullA

1          So, your Honor, under the elements clause Counts One,

2     Three and Four clearly are crimes of violence using the

3     categorical approach.  With respect to Count One, it seems to

4     me in the papers the government has essentially conceded that

5     point, your Honor, which is why they're advocating for the

6     survival of the residual clause and application of the

7     underlying conduct approach.  There is simply, using the

8     categorical approach, your Honor, there is simply not an

9     element, the use, the attempted use, the threatened use of

10    physical force against person or property of another.  That

11    offense can be violated by giving money to a terrorist

12    organization, by a doctor treating a soldier in a terrorist

13    organization.  So, I think that even the government should

14    agree with our position on that, despite their argument with

15    respect to the residual clause.

16          844(i), your Honor, I want to turn to next, because

17    there is case law that has already held, in the Tenth Circuit,

18    that, post *Dimaya*, 844(i) only qualifies as a crime of violence

19    now under the unconstitutional residual clause.  That is

20    because the elements clause requires the use of force to be

21    against the property of another and 844(i) does not,

22    specifically say that.

23          The same argument is true with respect to

24    2332(a)(2)(A) through (D), which is what Mr. Ullah is charged

25    with.  Use of a weapon of mass destruction against any person

I8V5ullA

1   or property within the United States is the language of that

2   statute.  The elements clause requires use of force against the

3   property of another and this statute does not.  Significant

4   about that statute, your Honor, is that there are other

5   provisions in 2332(a) that do provide for -- do specifically

6   mention the property owned and leased by the United States or

7   foreign government to specifically address property of another.

8   If you look at (a)(3) and (4).

9          So, I think if you look at the plain reading then of

10  that statute, that statutory language leads only to one

11  conclusion:  Had Congress wanted this provision to apply to the

12  property of others only, it would have written it that way

13  since it clearly did it in the other subsections.

14         So, your Honor, we think that it is clear that those

15  counts are no longer crimes of violence, your Honor, and to sum

16  up, the plain text of 924(c) supports our position that it

17  requires separate and distinct crimes of violence which Count

18  Six fails to do.  The Supreme Court supports our interpretation

19  of 924(c) and the elements of 924(c).  The government's

20  interpretation reads out essentially language of that statute

21  and they have no authority for their interpretation.  They

22  focus on double jeopardy, an issue that we do not raise.  Your

23  Honor, the plain language of that statute, the Supreme Court

24  ruling on that, canons of construction all support our position

25  that Count Six should be dismissed.

I8V5ullA

1          THE COURT:  Okay.  Anything else?

2          MS. GALLICCHIO:  Nothing else.

3          THE COURT:  Mr. Turner?

4          MR. TURNER:  Thank you, your Honor.

5          THE COURT:  Go ahead.

6          MR. TURNER:  Your Honor, this argument, this motion is

7     foreclosed by controlling Second Circuit authority; the

8     *Mohammed* case, the *Khalil* case, the *Salameh* case cited in our

9     brief.  Those cases have recognized and found that based on the

10    text and the history of Section 924(c), the same conduct can

11    violate both section 924(c) and the underlying crime of

12    violence.  And that's based on the well-established principle

13    that each of those cases recognizes that Congress can impose

14    multiple punishments for the same conduct in two different

15    statutes.  Judge, really, the only answer that the defendant

16    posits for those cases is that his argument doesn't sound in

17    double jeopardy.

18          Your Honor, it is not surprising that the defendant

19    takes that position because those cases address the very

20    argument and analysis that he has raised in his motion.  The

21    defendant cannot avoid that analysis simply by leaving the

22    words "double jeopardy" or "multiplicity" out of his motion

23    papers.  Whether this argument is framed in terms of double

24    jeopardy or multiplicity or statutory construction, the

25    question that was addressed in those cases is whether it is

I8V5ullA

1    problematic for a defendant to be held responsible under both

2    924(c) and the underlying crime of violence based on the same

3    or similar conduct, and that question has been answered

4    repeatedly.  It is not problematic.

5        Your Honor, the *Mohammed* case is instructive.  There

6    was a substantive armed car jacking crime of violence

7    underlying the 924(c) charge.  Ms. Gallicchio just tried to

8    distinguish these cases based on the fact that they involved

9    conspiracy offenses.  *Mohammed* involved a substantive

10   underlying crime of violence and that underlying crime of

11   violence -- armed car jacking -- 18 U.S.C. 2119, included the

12   possession of a firearm.  The Second Circuit recognized that it

13   was confronted with the proposition of the government relying

14   on the same conduct to support both the underlying crime of

15   violence and the 924(c) violation.  In fact, the Second Circuit

16   went as far as to recognize that, for double jeopardy purposes,

17   under a *Blockburger* analysis, these were the same offense.

18   Section 924(c) was effectively a lesser included offense.  So,

19   if the government proved the 924(c) count it would necessarily

20   prove the armed car jacking.

21       The Second Circuit, looking to the text and the

22   history of 924(c), determined that there was no issue and that

23   Congress had spoken and spoken clearly that any crime of

24   violence warrants a separate and consecutive punishment under

25   924(c).

I8V5ullA

1              Judge, we will note, as we have in our papers, that

2      multiple cases have involved Section 924(c) violations based on

3      substantive offenses under the very statutes that are charged

4      here including other terrorism cases involving bombings such as

5      the *Rahimi* case in this district, which I will discuss in a

6      moment, but also the *Reid* case in the District of

7      Massachusetts, the *Tsarnaev* case also in the District of

8      Massachusetts.

9              So, your Honor, this is nothing new.  Neither the

10     formulation of a 924(c) charge based on an underlying crime of

11     violence predicated on the same or similar conduct and the

12     argument that the defendant is making is also not new and it

13     has been rejected.

14             Judge, the defendant relies heavily on *Rosemond* and

15     *Rodriguez Moreno*.  I would like to address those two cases

16     briefly.

17             THE COURT:  Okay.

18             MR. TURNER:  These are Supreme Court cases that were

19     decided in wholly different contexts.  *Rosemond* addressed the

20     requirements for aiding and abetting liability in the 924(c)

21     space, and *Rodriguez Moreno* addressed venue.

22             Both of those decisions did not address and they had

23     no occasion to address the issue that's presented here which is

24     whether it is problematic for a 924(c) count and an underlying

25     crime of violence to be based on the same conduct.  Those cases

1    involved underlying drug offenses.  To the extent they involve

2    isolated brief language suggesting that there are two distinct

3    elements to 924(c) that was, first, a natural -- it arose

4    naturally from the fact of those cases which involve drug

5    offenses; and second, it is not a remarkable proposition.

6    Judge, at bottom, the language that 924(c) prescribes two

7    things can be found in any number of cases.  That's not a

8    remarkable proposition.  The government is required to prove

9    both the underlying crime of violence and the 924(c) violation,

10   nothing in those cases or any other case suggests that the

11   government cannot rely on the same conduct to do so.

12          Judge, I mentioned the *Rahimi* case, I won't belabor

13   it, it is cited in our papers.  It decided the exact same issue

14   presented here.  Judge Berman recognized that cases such as

15   *Salameh* and *Khalil* foreclose the argument.  He also recognized

16   in a footnote in that decision that no matter how the argument

17   is framed, it is properly viewed as sounding in double jeopardy

18   or multiplicity and we submit that there is no reason to reach

19   a different result here.

20          Finally, Judge, I will note on this particular issue

21   given that Ms. Gallicchio focused on it, even if you were to

22   accept, at face value, this argument that there is a separate

23   and distinct acts requirement, which there is not based on the

24   cases I have just mentioned, there are multiple counts in this

25   indictment that do require the government to prove additional

I8V5ullA

conduct.  Your Honor alluded to one of them, Counts Five and

Count Three are examples.  The government doesn't have to prove

just a bombing but a bombing, for example, that attacked a

transportation facility or against people and facilities

associated with transportation.  It's very analogous to the

issue the *Mohammed* court confronted.  There you had use of a

gun, the 924(c) violation, and use of a gun to effect a car

jacking.  Here we have the use of a bomb, the 924(c) violation,

and the use of a bomb to attack a transportation facility or

other similar facilities.

So, Judge, we submit that based on the controlling

Second Circuit case law there is no merit to the double

jeopardy argument that's been raised by the defendant.  No

matter how it's framed, statutory construction, double jeopardy

or otherwise, those cases control and the argument has no

merit.

THE COURT:  Well, I do want to ask you about the

residual clause because you do argue that *Dimaya* doesn't take

that out here, right?

MR. TURNER:  We do, Judge, and I can turn to that.

THE COURT:  Yes, you should.

Were you finished?

MR. TURNER:  No, I was not.  Just, I was actually

going to turn to the *Dimaya* piece of the argument.

THE COURT:  All right.  So go ahead.

I8V5ullA

1          MR. TURNER:  Judge, for the reasons that are set forth

2    in greater detail in our papers, we submit that post *Dimaya*

3    Count One can still properly be viewed as a crime of violence

4    under the residual clause or what is also known as the risk of

5    force clause in Section 924(c), 924(c)(3)(B).

6          Judge, *Dimaya* did not require -- and if I ever at the

7    outset, Judge, let me just note that the Court need not reach

8    this issue to decide the defendant's motion.

9          THE COURT:  Well, I'm going to need to reach this

10   issue if I ever instruct the jury, aren't I?

11         MR. TURNER:  Judge, we agree that ultimately this

12   question would be one for the jury charge.  However, Judge,

13   there are multiple ways in which the question could be mooted

14   or narrowed or even clarified between now and the time of any

15   trial, including through a ruling in the *Barrett* case, which is

16   pending in the Second Circuit.

17         THE COURT:  That's been pending a long time.  That was

18   my case, so I know.

19         MR. TURNER:  Or potentially through a resolution of

20   the case, your Honor.

21         Judge, with that said, *Dimaya* does not require a

22   categorical approach to be applied to the risk of force clause

23   of Section 924(c).  The decision itself, the multiple decisions

24   in the *Dimaya* case --

25         THE COURT:  It is the exact same language as the

I8V5ullA

1    provision for which it did, right?

2              MR. TURNER:  It does have the same or nearly identical

3    language and we are not drawing --

4              THE COURT:  Why would the outcome be different?

5              MR. TURNER:  We are not drawing distinction based on

6    the text, your Honor.

7              THE COURT:  What are you basing the distinction on?

8              MR. TURNER:  We are basing the distinction on the

9    context in which 924(c)(3)(B), the risk of force clause,

10   exists, as well as the decisions themselves in *Dimaya*, which

11   trace throughout a thread that a substantial risk standard,

12   such as that set forth in the risk of force clause, operating

13   by itself, is not constitutionally problematic if it is applied

14   to real world conduct.  That thread can be traced in the

15   plurality decision, as well as in the Justice Gorsuch's

16   concurring opinion, and of course in the dissent.  That

17   principle, combined with the canon of constitutional avoidance,

18   which we submit is powerful here, certainly authorizes and we

19   submit makes it imperative, that Courts look again at the risk

20   of force clause and assess whether it is best interpreted in

21   fact in light of that canon as requiring an underlying conduct

22   approach that looks to the specific facts of the case.

23              I also mention the context of Section 924(c).  Many of

24   the factors that have animated the Supreme Court's decisions in

25   applying a categorical approach to the residual clause in the

I8V5ullA

|    |    |
|----|----|
| 1  | ACCA context and in the context of Section 16(b) are not |
| 2  | present in the context of Section 924(c).  This can be traced |
| 3  | back to the *Taylor* decision in the Supreme Court running |
| 4  | through *Johnson* and *Dimaya*.  Two important considerations that |
| 5  | animated those decisions are that by applying a categorical |
| 6  | approach to the risk of force clause, you avoid practicality |
| 7  | concerns and Sixth Amendment concerns that could be raised if |
| 8  | you have a sentencing judge, a sentencing court, making factual |
| 9  | determinations about a prior conviction potentially years ago |
| 10 | that is not before -- |
| 11 |         THE COURT:  These are all good arguments to jettison |
| 12 | the categorical approach but the Second Circuit says -- |
| 13 | basically endorsed it, right?  In *Hill*?  Am I missing |
| 14 | something? |
| 15 |         MR. TURNER:  Judge, the Second Circuit's precedent |
| 16 | does apply a categorical approach to the risk of force clause. |
| 17 |         THE COURT:  Right. |
| 18 |         MR. TURNER:  I'm sorry? |
| 19 |         THE COURT:  Right.  I'm agreeing with you. |
| 20 |         MR. TURNER:  And we are suggesting, Judge, that based |
| 21 | on the intervening decision in *Dimaya*, which for the reasons -- |
| 22 |         THE COURT:  You think *Dimaya* has overruled *Hill*? |
| 23 |         MR. TURNER:  Not overruled, your Honor, but the |
| 24 | reasoning and the decision itself, we submit, has cast |
| 25 | substantial doubt on whether the risk of force clause is |

I8V5ullA

1   properly interpreted as requiring a categorical approach.  So,

2   we submit that should the Court wish to reach the issue, the

3   Court could reach the issue but, again, for the moment we also

4   submit that it is something that the Court need not reach in

5   deciding the defendant's motion because it is undisputed that

6   Count Six is predicated on other crimes of violence that the

7   defendant does not dispute qualify as crimes of violence under

8   the force clause, the elements clause, the validity of which is

9   not in question after *Dimaya*.

10           THE COURT:  Well, I'm not -- Ms. Gallicchio will be

11   able to respond to that but my point is whether I decide this

12   now or avoid it now, I'm going to still need to deal with this

13   in a couple of months if we go to trial.  Right?  I mean, I

14   will have to instruct the jury on these things.  I am going to

15   have to instruct a jury as to what it is they need to find in

16   order to convict on Count Six.  If I agree with you now that at

17   least some of these would justify Count Six, I am still going

18   to have to ultimately instruct the jury as to what they need to

19   find, and what theories you are relying on are going to matter.

20   In the interim, I suppose may be Barrett will get decided and

21   that will provide some guidance.  I don't know that it will.

22   We are two and a half months away from trial at this point,

23   right?

24           MS. GALLICCHIO:  That's correct.

25           THE COURT:  Two months.

I8V5ullA

1          MR. TURNER:  The Court has set an October 29th trial

2    date.

3          THE COURT:  Almost exactly two months away.

4          MR. TURNER:  Judge, what we would respectfully submit

5    and propose here is that given that the challenge to Count Six

6    is, in our view, entirely meritless based on the controlling

7    case law, and Count Six is based here on crimes of violence

8    that in their papers the defendant has acknowledged Counts

9    Three and Five qualify as crimes of violence after *Dimaya* under

10   the force clause which is not implicated by *Dimaya*, the only

11   issue that the Court need address for that motion is whether

12   there is any merit to the multiplicity argument that's been

13   raised by the defendant which there is not under the

14   controlling case law.  Then, your Honor, we submit that in the

15   time between now and when the Court is instructing the jury and

16   making determinations about how to instruct the jury, those

17   issues, to the extent they are still live, could be briefed in

18   the *in limine* process and, in addition, as your Honor has

19   pointed out, there could be a decision from *Barrett* or other

20   intervening events that crystallize, clarify, or moot, the

21   issues.

22          For example, if the Barrett Court were to issue a

23   decision adopting the government's position, then the

24   underlying crimes of violence could be properly submitted to

25   the jury for a determination as to whether the specific conduct

I8V5ullA

 1    has them qualify as crimes of violence.

 2              THE COURT:  Okay.  All right.

 3              Is there anything else you wanted to cover,

 4    Mr. Turner?

 5              MR. TURNER:  One last point, your Honor, which is the

 6    defendant raises in his reply brief for the first time and

 7    Ms. Gallicchio has argued today, that two additional of the

 8    underlying predicate crimes of violence, Count Four, which is

 9    844(i), the destruction of property, and Count Two, the weapons

10    of mass destruction count under 18 U.S.C. 2332(a), do not

11    qualify as crimes of violence even under the force clause.

12    Again, Judge, those issues have not been fully briefed for the

13    Court given that they were raised for the first time in the

14    reply brief.

15              Briefly, Judge, the argument that the weapons of mass

16    destruction count does not qualify as a crime of violence is,

17    frankly, far-fetched.  The Second Circuit has held, and this is

18    in the *Hill* decision, that there must be not just a theoretical

19    possibility of the statute being applied to conduct that

20    doesn't qualify as a crime of violence but a realistic

21    probability.  There is no such realistic probability with

22    respect to that statute.

23              Again, your Honor, with respect to 844(i), there is

24    case law in the Tenth Circuit finding that it does not qualify

25    as a crime of violence under the force clause.  That issue is

I8V5ullA

1    open in this Circuit, it has not been fully briefed.  We just

2    wanted to point that out for two reasons.  First, the Court

3    need not reach either of those two questions because, again,

4    there are undisputed other crimes of violence underlying Count

5    Six so that that motion can properly and, in our view, easily

6    be decided based on Counts Three and Five which are in

7    disputably crimes of violence under the force clause; and

8    second, your Honor, to highlight that to the extent the

9    defendant is raising additional arguments about which of the

10   underlying counts properly qualify as crimes of violence, those

11   issues with respect to 844(i) and 2332(a) have not been fully

12   briefed and could be briefed as part of the *in limine* process

13   that would allow the Court to fully address any 924(c) related

14   issues for purposes of charging the jury, your Honor.

15        THE COURT:  Okay.  Thank you, Mr. Turner.

16        Ms. Gallicchio?

17        MS. GALLICCHIO:  Yes, Judge.  Just briefly.

18        Your Honor, I just want to respond briefly with

19   respect to the *Rosemond* case and the *Rodriguez Moreno* case,

20   your Honor.  The government, as they said in their papers,

21   suggests that because the *Rodriguez Moreno* case addressed the

22   question of venue which actually was a kidnapping, not a drug

23   offense, a kidnapping offense in a 924(c) event, and *Rosemond*

24   was addressing aiding and abetting in relationship to drug

25   trafficking in a 924(c), that they're not instructive.  But, I

I8V5ullA

1      think that they should read those cases again much more

2      carefully because while, yes, that's true that was the primary

3      issue that was raised on appeal the Court, in analyzing what it

4      means to aid and abet and the question of venue, they had to

5      analyze, in detail, what the statute involves.  And it is given

6      a great deal of coverage in both of those cases, the question

7      about 924(c), and what is required.  And, clearly, both of

8      those cases state that 924(c) contained two distinct conduct

9      elements.

10             The government also suggests that because there are

11     other elements in the underlying counts that our argument

12     fails.  But, your Honor, those underlying counts, our position

13     is, that those other elements are either intent elements or

14     jurisdictional elements and those underlying crimes, however,

15     the conduct, the essential conduct element is use of a bomb.

16     They cannot be committed without the use of a bomb which is the

17     essential point of our argument, your Honor.

18             And finally, your Honor --

19             THE COURT:  That's with respect to all?

20             MS. GALLICCHIO:  With respect to Two through Five.

21             THE COURT:  Two through Five including Five.  Five

22     can't be committed without using the bomb.

23             MS. GALLICCHIO:  Yes.  That's our position.

24             THE COURT:  Okay.

25             MS. GALLICCHIO:  Your Honor, and then finally with

I8V5ullA

1   respect to the question of crimes of violence, I do think it is

2   important for the Court to make the decisions, make a decision

3   with respect to those three that we have outlined in our papers

4   that we have discussed here in court so that everyone is aware,

5   if this case were to go to trial, what we are facing.  And not

6   wait for motions *in limine* or discussions on jury instructions

7   for decisions on these issues.

8          Your Honor, we have pointed out to Counts One through

9   Five.  The question of what is a crime of violence we all know

10  is changing every day so we are not making any other arguments

11  at this point.  Under the state of the law our argument is with

12  respect to the counts that we have identified.

13         THE COURT:  Okay.

14         MS. GALLICCHIO:  Thank you.

15         THE COURT:  All right.  I am going to reserve.  This

16  was useful and it is always good to have good lawyers and I

17  want to think about the arguments that have been made, so I'm

18  going to do that but I will rule shortly.  In the meantime, we

19  have got a trial scheduled so we should be proceeding with that

20  in mind.  That date is not going to change, that's a real date.

21  So, that's the point I wanted to make.

22         Is there anything else we should talk about while we

23  are all here?  Mr. Turner?

24         MR. TURNER:  Other than potentially scheduling, your

25  Honor, pretrial dates, nothing further on the motions.

I8V5ullA

1        THE COURT:  Dates for final pretrial conference and

2   submissions?

3        MR. TURNER:  That's right, your Honor.  At the last

4   conference your Honor indicated that at today's conference you

5   might be inclined to set date for *in limine* briefing.

6        THE COURT:  I will do that.  I have told you how

7   generally we do that, probably five weeks before is when I

8   expect submissions to be made, government's motions *in limine*,

9   404(b) notice which may not be applicable here, witness list,

10  exhibit list, a week or 10 days later defendant's response, and

11  defendant motions *in limine*.  If you know you are putting on a

12  case, I guess unless there is a reason not to, witnesses and

13  exhibits for that, and then give the government an opportunity

14  to respond to those motions *in limine*, etc., and then the final

15  pretrial conference with the last date coinciding with the

16  government's response being the date for joint proposed request

17  to charge and joint proposed voir dire.

18        So, I will issue an order in the next couple of days

19  about that, probably the beginning of next week, but that will

20  be the rough time table.  So, deliverables will start being due

21  about five or so weeks before trial.  Okay?

22        MR. TURNER:  Thank you, Judge.

23        THE COURT:  Yes.

24        Ms. Gallicchio, anything else?

25        MS. GALLICCHIO:  No.  Nothing else, your Honor.  Thank

I8V5ullA

1   you.

2          THE COURT:  Mr. Ullah, I am going to reserve on this

3   motion, we are going to go forward with trial as we previously

4   scheduled.  If, for whatever reason, you think you need to see

5   me between now and the trial date, you tell Ms. Gallicchio and

6   we can schedule something, that is not a problem.  Okay?

7          THE DEFENDANT:  Okay.

8          THE COURT:  All right.  So, let me thank the marshals.

9   Let me thank the court reporter, of course.  Let me thank

10  everybody who is here in attendance.  And, I appreciate the

11  lawyers' good efforts.  It is helpful to have briefing and

12  quality argument.

13         Have a nice day.

14                              o0o

15

16

17

18

19

20

21

22

23

24

25