

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 11, 2018

<u>By ECF</u>
The Honorable Richard J. Sullivan
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

      Re:    *United States* **v.** *Akayed Ullah*, **18 Cr. 16 (RJS)**

Dear Judge Sullivan:

      The Government respectfully writes in connection with the defendant's pending motion to dismiss Count Six of the Indictment, to advise the Court that yesterday, September 10, 2018, the Second Circuit issued the enclosed decision in *United States* v. *Barrett*, No. 14-2641 ("*Barrett*"). The Second Circuit held in *Barrett* that the residual clause of 18 U.S.C. § 924(c)(3)(B) does not require application of the categorical approach in the context of a pending § 924(c) charge, such as Count Six here. *See Barrett* at 21-33 (discussing *Sessions* v. *Dimaya*, 138 S. Ct. 1204 (2018)). Instead, a "conduct-specific approach" that looks to the defendant's conduct is properly applied, pursuant to which a jury determines whether the predicate offense at issue, as committed by the defendant, satisfies § 924(c)(3)(B). *See id.*

      Accordingly, *Barrett* compels the rejection of the defendant's argument that certain of the predicate offenses underlying Count Six – including the material-support offense charged in Count One under 18 U.S.C. § 2339B – cannot qualify as crimes of violence for purposes of § 924(c) in light of *Dimaya*. Under *Barrett*, whether a particular predicate offense alleged in Count Six qualifies as a crime of violence under § 924(c)(3)(B) is properly determined by the jury at trial using the conduct-specific approach endorsed by the Second Circuit, based on the facts of the defendant's conduct in this case.[1]

      Respectfully submitted,

      GEOFFREY S. BERMAN
      United States Attorney
      Southern District of New York

By: _____/s/_____
      Shawn Crowley / Rebekah Donaleski / George Turner
      Assistant United States Attorneys
      (212) 637-1034 / 2423 / 2562

Enclosure
Cc (w/encl):  Defense Counsel (by ECF)

---

[1] Certain of the alleged predicate offenses underlying Count Six also qualify as crimes of violence as a matter of law under the elements-based clause of § 924(c)(3)(A).

14-2641-cr
USA v. Barrett

# In the
# United States Court of Appeals
## for the Second Circuit

———————

August Term 2015

No. 14-2641-cr

United States of America,
*Appellee*,

v.

Dwayne Barrett, AKA Sealed Defendant 3, AKA Tall Man,
*Defendant-Appellant*,

Fahd Hussain, AKA Ali, AKA Moe, Tameshwar Singh, AKA
Sealed Defendant 5, Shea Douglas, Jermaine Dore, AKA St.
Kitts, AKA Blaqs, Taijay Todd, AKA Sealed Defendant 4, AKA
Biggs, Damian Cunningham, AKA Jaba,

*Defendants.*\*

———————

On Appeal from the United States District Court
for the Southern District of New York

———————

Argued: January 22, 2016
Decided: September 10, 2018

———————

———————

\* The Clerk of Court is directed to amend the caption as set forth
above.

14-2641-cr
*United States v. Barrett*

Before: WINTER, RAGGI, and DRONEY, *Circuit Judges*.

_____

On appeal from a judgment entered in the United States District Court for the Southern District of New York (Sullivan, *J.*) following a jury trial, defendant challenges his conviction for using firearms in the commission of violent crimes, *see* 18 U.S.C. § 924(c)(1)(A), in one case causing death, *see id.* § 924(j). Defendant argues that the predicate felonies for these firearms offenses—substantive and conspiratorial Hobbs Act robbery, *see id.* § 1951—are not "crime[s] of violence" within the meaning of § 924(c)(3), a conclusion he maintains is compelled by the Supreme Court's decisions in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *Johnson v. United States*, 135 S. Ct. 2551 (2015). Defendant's argument as to substantive Hobbs Act robbery is defeated by this court's post-*Dimaya* decision in *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), which holds substantive Hobbs Act robbery to be a categorical crime of violence under § 924(c)(3)(A). His argument as to conspiratorial Hobbs Act robbery fails for two reasons. First, our precedent has long recognized that a conspiracy to commit a crime of violence is itself a crime of violence, and *Dimaya/Johnson* warrant no different conclusion because we need not look beyond the elements of Hobbs Act robbery conspiracy to follow our precedent here. Second, and in any event, the § 924(c)(3) definitions of a crime of violence apply only to the predicate offense of a crime of *pending* prosecution, not a crime of *prior* conviction as in *Dimaya* and *Johnson.* This means that any § 924(c)(3)(B) factfinding as to the violent nature of the predicate offense and the risk of physical force in its commission can be made by the trial jury in deciding the defendant's guilt, thus avoiding both the Sixth Amendment and due process vagueness concerns at issue in *Dimaya* and *Johnson.* The fact

that the jury was not charged to make such findings here is harmless error because the record of beatings, shootings, and murder in this case admits no other conclusion but that the charged robbery conspiracy was a violent crime under § 924(c)(3)(B).

AFFIRMED.

———————

KELLEY J. SHARKEY, ESQ., Brooklyn, New York, *for Defendant-Appellant*.

MICHAEL D. MAIMIN, Assistant United States Attorney (Amy R. Lester, Jessica A. Masella, Karl Metzner, Assistant United States Attorneys, *on the brief*), *for* Geoffrey S. Berman, United States Attorney for the Southern District of New York, New York, New York, *for Appellee*.

———————

REENA RAGGI, *Circuit Judge*:

Defendant Dwayne Barrett stands convicted after a jury trial in the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*) of conspiracy to commit Hobbs Act robbery, *see* 18 U.S.C. § 1951 (Count One); using a firearm in the commission of that conspiracy, *see id.* §§ 924(c)(1)(A) and 2 (Count Two); two substantive Hobbs Act robberies, *see id.* §§ 1951 and 2 (Counts Three and Five); and using firearms in the commission of those robberies, *see id.* §§ 924(c)(1)(A) and 2 (Counts Four and Six); in one case causing death, *see id.* §§ 924(j) and 2 (Count Seven). Sentenced to a total prison term of 90 years, Barrett now challenges his conviction, arguing through counsel that (1) his Counts Two, Four,

3

Six, and Seven firearms convictions must be vacated and those charges dismissed because the felonies in which the firearms were used—substantive and conspiratorial Hobbs Act robbery—are not "crime[s] of violence" within the meaning of § 924(c)(3), a conclusion he maintains is compelled by the Supreme Court's recent decisions in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *Johnson v. United States*, 135 S. Ct. 2551 (2015)[1]; (2) his conviction must be vacated in its entirety and a new trial ordered because cell phone and videotape evidence was erroneously admitted at trial; and (3) in any event, his sentence must be vacated and new sentencing ordered because the mandatory consecutive sentencing provision of § 924(c)(1)(C) should not have been applied to his § 924(j) Count Seven conviction. In supplemental *pro se* briefs, Barrett raises additional evidentiary, sufficiency, charging, and prosecutorial misconduct challenges.

In a summary order filed today, we address all of Barrett's arguments except the first, *i.e.*, his "crime of violence" challenge to the Hobbs Act offenses underlying his §§ 924(c)(1)(A) & (j) convictions. We here conclude that Barrett's challenge to his Counts Four, Six, and Seven convictions—predicated on *substantive* Hobbs Act robberies—is defeated by *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), which, post-*Dimaya*, holds substantive Hobbs Act robbery to be a categorical crime of violence within the definition of § 924(c)(3)(A). Barrett's challenge to his Count Two conviction—predicated on a Hobbs Act robbery *conspiracy*—fails for two reasons. First, our precedent has long held that a conspiracy to commit a categorical crime of violence is itself a categorical crime of violence. *See, e.g.*, *United States v. Patino*, 962 F.2d 263, 267 (2d Cir. 1992). *Dimaya* and *Johnson* compel no

---

[1] Decision in this case was held pending the Supreme Court's decision in *Dimaya* and this court's post-*Dimaya* decision in *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018).

different conclusion because we need look only to the elements of Hobbs Act robbery conspiracy as applied to § 924(c)(3)(A) together with § 924(c)(3)(B) in following our precedent here.  Second, and in any event, a conduct-specific, rather than categorical, approach to § 924(c)(3)(B) is appropriate because the predicate offense defined by that statute is an element of the crime of *pending* prosecution, not a crime of *prior* conviction as in *Dimaya* and *Johnson*.  This means that the trial jury, in deciding guilt, can determine whether the predicate offense "by its nature, involve[d] a substantial risk that physical force . . . may be used" in committing the offense, 18 U.S.C. § 924(c)(3)(B), thereby avoiding both the trial-by-jury and due process vagueness concerns identified in *Dimaya* and *Johnson.*  The fact that the jury was not charged to make such findings here is harmless error because the record of beatings, shootings, and murder in this case admits no other conclusion but that the charged robbery conspiracy was a violent crime under § 924(c)(3)(B).  *See, e.g.*, *Neder v. United States*, 527 U.S. 1, 15 (1999).

Accordingly, the judgment of conviction is affirmed.

## BACKGROUND

Between August 2011 and January 2012, Barrett joined together with others (the "Crew") in a conspiracy to commit a series of frequently armed, and invariably violent, robberies.  The Crew generally targeted small business operators believed to be in possession of cash or valuables.  Co-conspirator Fahd Hussain, himself a Bronx storeowner, identified most of these targets for the Crew.  During the robberies, Crew members wore masks and gloves to conceal their identities.  They used guns, knives, baseball bats, and

14-2641-cr
*United States v. Barrett*

their fists to threaten and coerce victims, physically injuring several and killing one.

### I.    The Robberies

To address Barrett's § 924(c) challenge, we need only summarize certain robberies and attempted robberies supporting his Count One conviction for Hobbs Act robbery conspiracy.  In doing so, we indicate the two particular robberies supporting Barrett's substantive Hobbs Act convictions on Counts Three and Five, as well as his § 924(c)(1) firearms convictions on Counts Two, Four, and Six, and his § 924(j) firearms-murder conviction on Count Seven.

1. *Rauf Robbery*:  On August 22, 2011, Barrett and three other Crew members traveled to Matamoras, Pennsylvania, where they robbed Abdul Rauf, the owner of a local gas station and convenience store, of approximately $46,000.  In the course of the robbery, one Crew member punched Rauf in the face.

2. *Tawfiq Robbery*:  On October 5, 2011, in the Bronx, Barrett and another Crew member robbed Mubarak Tawfiq, a telephone calling cards dealer, of more than $1,000 in cash but, after physically struggling with the victim, abandoned the effort.

3. *Abdulkader Attempted Robbery:*  On October 10, 2011, also in the Bronx, Crew members (this time, without Barrett) attempted to rob convenience store owner Youssef Abdulkader.  As the robbers approached, one brandishing a knife, Abdulkader dropped his cellphone and laptop computer and ran off.

4. *Goel Robbery:*  That same day, in New Rochelle, New York, Crew members (again without Barrett) robbed Prashant Goel, a telephone calling cards dealer**,** of approximately $6,000 in cash and

14-2641-cr
*United States v. Barrett*

thousands of dollars' worth of telephone calling cards. In committing this robbery, Crew members smashed the windows of Goel's car with baseball bats, slashed the car's tires with a knife, thrust the knife into the car to threaten Goel, and punched him.

5. *Salahi Robbery:* On October 29, 2011, in the Bronx, Barrett and other Crew members robbed poulterer Ahmed Salahi of $15,000. Crew members had followed Salahi to a mosque and, when he exited, forced him at knifepoint into his car and drove him to his home. While Salahi lay on the floor of his car, one Crew member held a knife to his head, while another took Salashi's keys and entered his home. Inside were Salahi's brother Kassim Salahi with his 8- and 10-year old sons. Brandishing guns, Barrett and fellow Crew member Jermaine Dore ordered Kassim Salahi and his children to lie on the floor and not to make a sound. Meanwhile Crew members took the money they had sought from a closet, whereupon they left the home. These events informed Barrett's Count Three substantive Hobbs Act conviction, as well as his Counts Two and Four firearms convictions.

6. *Singh Attempted Robbery*: On November 14, 2011, Barrett and another Crew member attempted to rob gas station manager Jaspal Singh of cash proceeds from that business. Upon noticing a black Mercedes Benz trailing him from Mt. Vernon, New York, to the Bronx, Singh called the police. When police stopped the vehicle, Barrett, who was driving, consented to its search, resulting in the discovery of two baseball bats, but no further police action.

7. *Cornwall Robbery*: On December 5, 2011, in another Bronx robbery committed without Barrett, Crew members robbed Fitzroy Cornwall, who worked at Westchester Medical Center, of jewelry, his wallet, and the money contained therein. In committing this robbery,

14-2641-cr
*United States v. Barrett*

Crew members forcibly threw Cornwall to the ground and fired a gunshot into the air.

8. *Dafalla Attempted Robbery and Murder*: On December 12, 2011, Barrett and Crew members Dore and Taijay Todd robbed and killed Gamar Dafalla, events that support Barrett's Count Two firearms conviction, Count Five substantive Hobbs Act conviction, Count Six firearms conviction, and Count Seven firearms-murder conviction. The three Crew members, traveling in Barrett's Mercedes, had followed Dafalla to and from the Mt. Vernon site of a cash sale of untaxed cigarettes. As Barrett waited in the car, Todd and Dore approached the minivan in which Dafalla was traveling with Jamal Abdulla and Zhao Liang. With both Dore and Todd brandishing guns, the Crew members pulled Abdulla and Liang out of the minivan, entered the vehicle, and drove off with Dafalla. As they did so, Dafalla surreptitiously threw $10,000 in sale proceeds out the window, where Abdulla recovered it. When Dore and Todd realized what had happened, Dore shot and killed Dafalla. Subsequent ballistics examination showed that the firearm that killed Dafalla was the same one discharged in the Cornwall robbery the previous week. After Dore was arrested, Barrett retrieved and disposed of the murder weapon, throwing it into the Hudson River.

9. *Althomory Robbery*: Only hours after the Dafalla murder, Barrett, Dore, and other Crew members struck again, this time robbing Bronx tobacco salesman Mohammed Althomory of approximately $15,000. While one robber confronted Althomory directly at gunpoint, another approached him from behind and, wielding a knife, threatened to kill him if he yelled. The men then hit Althomory with sufficient force to knock him down and cause

8

14-2641-cr
*United States v. Barrett*

bleeding and made off with his money. This firearm use supports Barrett's Count Two conviction.

10. *Mohammed Robbery*: On December 31, 2011, Barrett again acted as the driver when Crew members robbed telephone calling cards supplier Ayoub Mohammed of approximately $3,200. The robbery, which took place in a Bronx parking garage, was captured on video, which shows the robbers repeatedly punching Mohammed in the head, face, and arms, both before and after throwing him to the ground, whereupon they ran off with the bag containing his cash.

11. *Krco Robbery*: On January 7, 2012, Barrett, Dore, and another Crew member robbed Bronx wholesale bodega supplier Djujka Krco, of approximately $1,800. Once again, Barrett acted as the driver, while Dore and the other robber threatened Krco at knifepoint and hit her. When she tried to run away, the robbers chased and grabbed her, hitting her again before taking her money.

## II.    Procedural History

Barrett stood trial together with Crew member Dore on the seven counts of the Indictment. Four Crew members also named in the original Indictment pleaded guilty before trial; another was tried separately from Barrett and Dore and found guilty. Two Crew members and a number of robbery victims testified for the prosecution, and extensive physical and documentary evidence was adduced inculpating Barrett and Dore in the charged crimes.

On March 19, 2013, a jury found both defendants guilty of all seven counts of the Indictment. On July 16, 2014, the district court

14-2641-cr
*United States v. Barrett*

sentenced Barrett to an aggregate prison term of 90 years and an aggregate supervised release term of five years.[2]

This timely appeal followed.

## DISCUSSION

In his brief to this court, Barrett acknowledges that the trial evidence showed him to have been "a member of a violent robbery conspiracy," during which "one man was killed, another was abducted, and several more were held at gunpoint and assaulted." Def.'s Br. 3. Barrett nevertheless argues that his four firearms convictions—Counts Two, Four, Six, and Seven—must be vacated and the charges dismissed because Hobbs Act robbery predicates for those counts do not *categorically* satisfy the "crime of violence" requirement of § 924(c)(1). The argument fails on the merits.

---

[2] The district court sentenced Barrett as follows:

    Count One (Hobbs Act robbery conspiracy): 20 years;

    Count Two (firearms use in course of Count One): 5 years (mandatory consecutive);

    Count Three (substantive Hobbs Act robbery): 15 years (concurrent to Count Five, otherwise consecutive);

    Count Four (firearms use in course of Count Three): 25 years (mandatory consecutive);

    Count Five (substantive Hobbs Act robbery): 15 years (concurrent to Count Three, otherwise consecutive);

    Count Six (firearms use in course of Count Five): 25 years (mandatory consecutive);

    Count Seven (firearms use in course of Count Five resulting in death): 25 years (mandatory consecutive but merged with Count Six).

Dore was sentenced to a total prison term of 65 years, and this court has already affirmed his judgment of conviction. *See United States v. Dore*, 586 F. App'x 42 (2d Cir. 2014).

## I.    The Relevant Statutes

To explain our conclusion, we begin with the relevant statutory texts.

Section 924(c)(1) states the crime of conviction on challenged Counts Two, Four, and Six.  As pertinent here, it reads as follows:

> (A) . . . any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence . . .
>
> (i)    be sentenced to a term of imprisonment of not less than 5 years;
>
> (ii)   if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>
> (iii)  if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years. . . .
>
> (C) In the case of a second or subsequent conviction under this subsection, the person shall—
>
> (i)    be sentenced to a term of imprisonment of not less than 25 years . . . .

18 U.S.C. § 924(c)(1).

Section 924(j), which states the crime of conviction on challenged Count Seven, reads in pertinent part as follows:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall—

14-2641-cr
*United States v. Barrett*

> (1)    if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . . .

*Id.* § 924(j).

Section 924(c)(3) defines the "crime of violence" element of § 924(c)(1)(A) and, by incorporation, of § 924(j) as follows:

> For purposes of this subsection the term "crime of violence" means an offense that is a felony and—
>
> (A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3).

As this text makes plain, the § 924(c)(3)(A) definition is traditionally categorical, identifying a crime of violence by reference to an element that requires the actual, attempted, or threatened use of force.[3] Barrett argues that neither Hobbs Act substantive nor conspiratorial robbery satisfies this § 924(c)(3)(A) definition. He further argues that § 924(c)(3)(B)'s residual definition, referencing an offense that "by its nature" involves "a substantial risk" of physical force, must be invalidated as unconstitutionally vague in light of *Sessions v. Dimaya*, 138 S. Ct. 1204 (holding similar residual clause definition of "crime of violence" in 18 U.S.C. § 16(b)

---

[3] In contrast, a conduct-specific inquiry looks to the facts of the specific case.

14-2641-cr
*United States v. Barrett*

unconstitutionally vague[4]), and *Johnson v. United States*, 135 S. Ct. 2551 (reaching same conclusion regarding residual clause definition of "violent felony" applied to prior conviction under Armed Career Criminal Act ("ACCA")[5]).

Before addressing these challenges, we set forth one further statutory text, defining substantive and conspiratorial Hobbs Act robbery:

> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires to do so, . . . shall be . . . imprisoned not more than twenty years . . . .
>
> (b) As used in this section—
>
>> (1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of

---

[4] Title 18 U.S.C. § 16, which provides a general two-part definition of a "crime of violence," states as follows:

> The term "crime of violence" means—
>
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

[5] ACCA mandates an aggravated sentence for § 922(g) firearms crimes committed by persons with three or more prior violent felony or serious drug convictions. It defines "violent felony" to mean an offense that, among other things,

> (i)   has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)  is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).

> actual or threatened force, or violence, or fear of
> injury, immediate or future, to his person or
> property, or property in his custody or possession, or
> the person or property of a relative or member of his
> family or of anyone in his company at the time of the
> taking or obtaining.

18 U.S.C. § 1951.

## II. Barrett's Substantive Hobbs Act Robberies Are Categorical Crimes of Violence Under 18 U.S.C. § 924(c)(3)(A)

Barrett first challenges his firearms conviction on Counts Four, Six and Seven on the ground that substantive Hobbs Act robberies are not crimes of violence under 18 U.S.C. § 924(c)(3)(A). This categorical challenge is defeated by *United States v. Hill*, 890 F.3d 51. *Hill* holds "that Hobbs Act robbery 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another'" and, thus, is a categorical "crime of violence under 18 U.S.C. § 924(c)(3)(A)." *Id.* at 53, 60 (quoting 18 U.S.C. § 924(c)(3)(A)).

The conclusion derives from the Hobbs Act's definition of robbery quoted *supra* at 13–14. The *Hill* defendant had argued that the definition did not categorically satisfy § 924(c)(3)(A) because it was possible to put a robbery victim "in 'fear of injury' to his person or property, . . . *without* the 'use, attempted use, or threatened use of physical force'" and, thus, "the minimum conduct necessary to commit a Hobbs Act robbery does not include the element necessary to qualify such robberies as crimes of violence for the purpose of § 924(c)(3)(A)." *Id.* at 57 (quoting first § 1951(b) and then § 924(c)(3)(A)) (emphasis in original). This court rejected the argument, observing, first, that the defendant had failed to show that

14-2641-cr
*United States v. Barrett*

in either "'his own case or other cases,'" the Hobbs Act had ever been applied in the absence of actual, attempted, or threatened force, so as to demonstrate a "'realistic probability'" that Hobbs Act robbery was not categorically a violent crime. *Id.* at 59 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (holding that to show predicate conviction not categorically a crime of violence "requires more than the application of legal imagination to . . . statute's language")). [6] Second, and in any event, the court explained that each of the fear-of-injury hypotheticals advanced to support defendant's argument, in fact, entailed the "use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(c)(3), as that term has been construed by the Supreme Court. *See United States v. Hill*, 890 F.3d. at 58–60 (explaining that "'physical force' . . . means simply '*violent* force—that is, force capable of causing physical pain or injury to another person'" (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original)).

Following *Hill*'s holding, we conclude that the substantive Hobbs Act robberies for which Barrett stands convicted are categorical crimes of violence under 18 U.S.C. § 924(c)(3)(A) and, thus, support his § 924(c)(1)(A) convictions on Counts Four and Six, and his § 924(j) conviction on Count Seven.

---

[6] Hill certainly used violent—indeed, deadly—force when, in the course of a Hobbs Act robbery, he shot and killed his target, a livery cab driver, in violation of 18 U.S.C. § 924(j)(1). *See United States v. Hill*, 890 F.3d at 52–53.

### III. Barrett's Conspiracy To Commit Hobbs Act Robbery Conspiracy Is a Crime of Violence Under 18 U.S.C. § 924(c)(3)

#### A. Hobbs Act Robbery Conspiracy Is a Categorical Crime of Violence as Defined by § 924(c)(3)(A) Together with § 924(c)(3)(B)

Barrett further challenges his firearms conviction on Count Two on the ground that a conspiracy to commit Hobbs Act robbery is not a crime of violence under 18 U.S.C. § 924(c)(3)(A) and § 924(c)(3)(B). Because the only crime at issue in *Hill* was substantive Hobbs Act robbery, this court had no occasion there to consider whether a Hobbs Act robbery *conspiracy* is also a crime of violence under the elements definition of § 924(c)(3)(A), or the residual definition of § 924(c)(3)(B).

In fact, it has long been the law in this circuit that a conspiracy to commit a crime of violence is itself a crime of violence under 18 U.S.C. § 924(c)(3). *See United States v. Desena*, 287 F.3d 170, 181 (2d Cir. 2002) (reaching conclusion with respect to conspiracy to commit assault in aid of racketeering); *accord United States v. Acosta*, 470 F.3d 132, 136–37 (2d Cir. 2006) (reaching conclusion with respect to conspiracy to injure, threaten, or intimidate person in exercise of civil rights). Indeed, we have so held with particular reference to Hobbs Act robbery conspiracy, *see United States v. Elder*, 88 F.3d 127, 129 (2d Cir. 1996), among other crimes, *see, e.g., United States v. Patino*, 962 F.2d at 267 (reaching conclusion with respect to kidnapping conspiracy). We have also so held in contexts other than § 924(c). *See United States v. Doe*, 49 F.3d 859, 866–67 (2d Cir. 1995) (recognizing Hobbs Act robbery conspiracy to be crime of violence under 18 U.S.C. § 16 for purposes of allowing government to proceed against

14-2641-cr
*United States v. Barrett*

juvenile as adult under Juvenile Delinquency Act); *United States v. Chimurenga*, 760 F.2d 400, 404 (2d Cir. 1985) (recognizing conspiracy to commit armed robbery as crime of violence for purposes of Bail Reform Act[7]).

The rationale was stated in *Chimurenga*, 760 F.2d at 404, and reiterated in *Patino*, on which subsequent cases rely.

> [C]onspiracy, by its very nature, is a collective criminal effort where a common goal unites two or more criminals. Such a meeting of the minds enhances the likelihood that the planned crime will be carried out. Thus, when a conspiracy exists to commit a crime of violence, . . . the conspiracy itself poses a "substantial risk" of violence, which qualifies it under Section 924(c)(1) and Section 924(c)(3)(B) as a crime of violence.

*United States v. Patino*, 962 F.2d at 267 (citation omitted). Applying this precedent here, we conclude that if a substantive offense is categorically a crime of violence under § 924(c)(3)(A)—as *Hill* holds Hobbs Act robbery to be—a conspiracy to commit that crime, by its "very nature" presents a substantial risk of physical force, so as also to be a violent crime under § 924(c)(3)(B). *Id.*

In urging otherwise, Barrett argues that the cited precedent cannot survive *Dimaya* and *Johnson*. In *Dimaya,* an alien challenged a deportation order premised on a prior state conviction for first-

---

[7] The Bail Reform Act defines a "crime of violence" similarly to § 924(c)(3), as follows:
>    (A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; [or]
>    (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 3156(a)(4).

14-2641-cr
*United States v. Barrett*

degree burglary, which immigration authorities held to be a crime of violence under the residual definition in 18 U.S.C. § 16(b).  *See supra* at 13 n.4.  In holding that provision unconstitutionally vague, *Dimaya* relied on reasoning earlier employed in *Johnson v. United States*, 135 S. Ct. at 2562–63, to invalidate ACCA's residual definition of a crime of violence, specifically, the "hopeless indeterminacy" that resulted from tying a judicial assessment of risk to a crime's hypothetical "ordinary case."  *Sessions v. Dimaya*, 138 S. Ct. at 1213 (internal quotation marks to *Johnson* omitted).

The identification of a crime's "ordinary case" is "a distinctive form of . . . the categorical approach," developed by the Supreme Court specifically for application to residual definitions of a crime of violence.  *Id.* at 1211; *see James v. United States*, 550 U.S. 192, 207–08 (2007) (identifying "proper inquiry" for categorical application of a residual definition to be "whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another" (emphasis added), and rejecting argument that ACCA's residual clause required prior crime of conviction to create risk of physical injury in "*all* cases" (emphasis in original)).  In *Dimaya*, the Supreme Court held that construing § 16(b)'s residual definition of a crime of violence by reference to an "ordinary case" raised due process vagueness concerns because of "grave uncertainty" about (1) how judges should estimate the risk posed by a crime's "ordinary case," and (2) what "threshold level of risk" would make a crime a violent felony.  *Sessions v. Dimaya*, 138 S. Ct. at 1211, 1213–14.  While the latter concern was not a problem in itself, it became so when layered on top of the first.  *See id.* at 1215–16; *Johnson v. United States*, 135 S. Ct. at 2561 (reaching same conclusion regarding ACCA residual clause).

18

14-2641-cr
*United States v. Barrett*

Section 924(c)(3)(B)'s definition of a violent crime is similar to that of § 16(b). Thus, Barrett argues that, after *Dimaya* and *Johnson,* a court cannot look to an "ordinary case" of Hobbs Act robbery conspiracy to identify the offense as a categorical crime of violence under § 924(c)(3)(B). That may be so.[8] Nevertheless, *Dimaya* and *Johnson* do not require us to abandon our *Patino/Chimurenga* line of precedent here. That is because there is no need to identify an "ordinary case" of Hobbs Act robbery conspiracy to make a violent crime determination under § 924(c)(3). *See Sessions v. Dimaya*, 138 S. Ct. at 1215–16 (observing that substantial risk standard posed constitutional concern only when applied to "'judge-imagined abstraction,'—*i.e.*, 'an idealized ordinary case of the crime'. . . . It is then that the standard ceases to work in a way consistent with due process." (quoting *Johnson v. United States*, 135 S. Ct. at 2558, 2561)). We can do so simply by applying the elements of that crime to § 924(c)(3)(A) together with § 924(c)(3)(B), in short, by following the traditional categorical approach.

To explain, an element of any conspiracy is an agreement between two or more persons to commit an offense against the United States. *See United States v. Jimenez Recio*, 537 U.S. 270, 274

---

[8] *See United States v. Eshetu*, 898 F.3d 36, 37 (D.C. Cir. 2018) (holding that *Dimaya*'s conclusion that § 16(b) is unconstitutionally vague compels conclusion that § 924(c)(3)(B) is also unconstitutionally vague because two statutes are "materially identical"); *United States v. Salas*, 889 F.3d 681, 685 (10th Cir. 2018) (holding that, as in *Dimaya* and *Johnson,* "ordinary-case requirement and an ill-defined risk threshold" compel conclusion that § 924(c)(3)(B) is unconstitutionally vague (internal quotation marks omitted)).

Neither *Eshetu* nor *Salas* address whether continued reliance on an ordinary-case standard makes sense for a predicate offense of a pending § 924(c)(1)(A) crime, or whether the canon of constitutional avoidance mandates a different interpretation of the statute. In *Eshetu*, the D.C. Circuit determined that it was bound by its own precedent to apply an ordinary-case approach to § 924(c)(3)(B), "[w]hatever the clean-slate merits" of a different approach by contrast. *United States v. Eshetu*, 898 F.3d at 37–38. Both points inform our discussion, *infra*, at III.B.1.

19

(2003) ("The Court has repeatedly said that the essence of a conspiracy is an agreement to commit an unlawful act." (alteration and internal quotation marks omitted)); *United States v. Praddy*, 725 F.3d 147, 153 (2d Cir. 2013) ("The essence of the crime of conspiracy, of course, is the *agreement* to commit one or more unlawful acts." (emphasis in original) (internal quotation marks omitted)); *United States v. Chimurenga*, 760 F.2d at 404. Focusing first on the object *offense* part of the agreement element, a court properly considers whether that offense is a categorically violent crime under § 924(c)(3)(A). If it is not, that is the end of the categorical inquiry. But if the object offense is itself categorically violent—as *Hill* holds a Hobbs Act robbery to be, *see supra* at 14–15—a court then turns its attention to the agreement element's requirement for two or more persons to join in a *common scheme* to achieve the object.

As the Supreme Court has observed in explaining why conspiracy is punished as a distinct crime, "[c]oncerted action both increases the likelihood that the criminal object will be successfully attained and decreases the probability that the individuals involved will depart from their path of criminality." *Callanan v. United States*, 364 U.S. 587, 593 (1961). Applying that reasoning to conspiracies to commit categorically violent crimes, this court has held that the agreement element of conspiracy so heightens the likelihood that the violent objective will be achieved that the conspiracy itself can be held categorically to present a substantial risk of physical force. *See United States v. Chimurenga*, 760 F.2d at 404 ("The existence of a criminal grouping increases the chances that the planned crime will be committed beyond that of a mere possibility. Because the conspiracy itself provides a focal point for collective criminal action, attainment of the conspirators' objectives becomes instead a

significant *probability*." (emphasis in original)). In sum, the agreement element means, "*in each case* that the [Hobbs Act robbery conspiracy] crime covers," the risk of force is present. *Sessions v. Dimaya*, 138 S. Ct. at 1211 (emphasis added) (distinguishing categorical approach based on elements from approach based on hypothetical "ordinary case").

Thus, we conclude that *Dimaya* and *Johnson* do not preclude reliance on our *Patino/Chimurenga* precedent here because we do not employ "ordinary case" analysis to determine if Hobbs Act robbery conspiracy is a violent crime as required by § 924(c)(1). Rather, we make that determination under traditional categorical analysis by reference only to the crime's elements as applied to both § 924(c)(3)(A) and § 924(c)(3)(B).[9] Accordingly, we affirm Barrett's conviction on Count Two.

### B. Barrett's Hobbs Act Robbery Conspiracy Is a Crime of Violence on a Conduct-Specific Application of § 924(c)(3)(B)

#### 1. A Conduct-Specific Approach to § 924(c)(3)(B) Is a Reasonable Construction of the Statute that Avoids Constitutional Concerns Identified in *Dimaya* and *Johnson*

Even if the elements of Hobbs Act robbery conspiracy did not thus establish it as a crime of violence on a traditional categorical application of § 924(c)(3)(A) and § 924(c)(3)(B), Barrett would not be

---

[9] To the extent our precedent has not always been clear in identifying a conspiracy's object offense as a violent crime under the elements definition of § 924(c)(3)(A), we do not pursue the point. We conclude only that, where, as here, the elements establish an object offense as a categorial crime of violence under § 924(c)(3)(A), the conspiracy itself—by virtue of its agreement element—is a categorical crime of violence under § 924(c)(3)(B).

entitled to relief from his § 924(c)(1) conviction on Count Two.  Section 924(c)(3)(B) can be applied to a defendant's case-specific conduct, with a jury making the requisite findings about the nature of the predicate offense and the attending risk of physical force being used in its commission.  Such a conduct-specific approach avoids both the Sixth Amendment right-to-trial and due process vagueness concerns identified in *Dimaya* and *Johnson.*

Barrett argues that a conduct-specific approach is foreclosed by our precedent categorically identifying crimes of violence under § 924(c)(3)(B).  *See United States v. Ivezaj*, 568 F.3d 88, 95 (2d Cir. 2009); *United States v. Acosta*, 470 F.3d at 134–35.  But these cases followed that course before *Dimaya* and *Johnson* held that the accepted categorical approach to residual clauses—the ordinary-case standard—was unconstitutionally vague.  The parties agree that *Dimaya* "raises serious constitutional questions" as to the continued viability of a categorical approach to § 924(c)(3)(B).  Gov. 2018 Supp. Br. 6; Def. 2018 Supp. Br. 4.  Where an intervening Supreme Court decision thus casts doubt on our prior precedent, a panel of this court is not foreclosed from considering whether the statutory text might be construed in a different way to avoid the constitutional concerns identified by the Supreme Court.  *See generally In re Zarnel*, 619 F.3d 156, 168 (2d Cir. 2010).[10]  Indeed, it is an "elementary rule" in construing acts of Congress that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality."  *Skilling v. United States*, 561 U.S. 358, 406 (2010)

---

[10] In deciding it was bound by its own precedent on this issue, the D.C. Circuit in *Eshetu* was apparently applying a more stringent standard for overruling a prior panel decision.  *See United States v. Eshetu*, 898 F.3d at 38 (requiring an intervening Supreme Court decision to establish that the prior panel decision "is clearly an incorrect statement of current law." (quoting *United States v. Dorcely*, 454 F.3d 366, 373 n.4 (D.C. Cir. 2006)).

14-2641-cr
*United States v. Barrett*

(emphasis and internal quotation marks omitted); *see INS v. St. Cyr*, 533 U.S. 289, 300 (2001) (recognizing court's obligation to identify statutory construction that avoids constitutional problems if it is "fairly possible" to do so (internal quotation marks omitted)).

Following that mandate, we begin with the Supreme Court's acknowledgment in both *Dimaya* and *Johnson* that no constitutional vagueness inheres in a substantial-risk definition of a crime of violence when applied to case-specific conduct. *See Sessions v. Dimaya*, 138 S. Ct. at 1215 (observing that "'we do not doubt' the constitutionality of applying [a] 'substantial risk [standard] to real-world conduct'" (second brackets in original) (quoting *Johnson v. United States*, 135 S. Ct. at 2561)). Such a conduct-specific application is, in fact, well suited to § 924(c)(3)(B) because the statute applies only to the predicate offense of a *pending* § 924(c)(1)(A) charge. To return a guilty verdict on such a firearms charge, a jury must find that the defendant used the firearm during and in relation to a "crime of violence" as defined in § 924(c)(3). Before *Dimaya* and *Johnson*, it was thought that the identification of a predicate offense as a crime of violence was a question of law for categorical determination by the court. If, following *Dimaya* and *Johnson*, a court can no longer make such a determination of law under § 924(c)(3)(B)'s residual definition (because the categorical ordinary-case standard is unconstitutionally vague), then § 924(c)(3)(B) is reasonably construed to present a question of fact to be found by the trial jury according to the defendant's "real-world conduct." *Id.* (internal quotation marks omitted); *cf. United States v. Gaudin*, 515 U.S. 506, 518–23 (1995) (holding that materiality element of fraud, long decided as question of law by courts, was question of fact that had to be submitted to jury). Submitting § 924(c)(3)(B) determinations to trial juries for

14-2641-cr
*United States v. Barrett*

conduct-specific determinations thus avoids not only the constitutional vagueness concerns that *Dimaya* and *Johnson* located in the categorical ordinary-case standard, but also the Sixth Amendment right-to-trial concern that originally prompted the Supreme Court to mandate a categorical approach to residual definitions of crimes of violence.

The categorical approach was introduced in *Taylor v. United States*, 495 U.S. 575 (1990). At issue there was not ACCA's residual clause, but one of the specified crimes of conviction that immediately precede the clause, specifically, burglary. *See* 18 U.S.C. § 924(e)(2)(B)(ii) (quoted *supra* at 13 n.5). Concluding that ACCA referred to burglary in the generic sense, not as defined by each of the 50 states, the Supreme Court held that the government could not introduce evidence about the "particular facts" of a defendant's prior crime to prove that his conviction was for generic burglary. *Taylor v. United States*, 495 U.S. at 600. Instead, the Court mandated a "categorical approach" that "look[ed] only to the fact of conviction and the statutory definition," *i.e.*, the elements, of generic burglary. *Id.* at 602; *see id.* at 598–99 (identifying "elements" of generic burglary and holding that if defendant "is convicted of any crime . . . having the[se] basic elements," he has been convicted of burglary for purposes of ACCA).

In rejecting a conduct-specific approach, the Court cited the statutory text, which specifically referred to "convictions" rather than conduct, as well as legislative history, which had once included a generic definition of burglary in ACCA. *Id.* at 600–01. But more potent still were the perceived "practical difficulties and potential unfairness of a factual approach," especially the specter of evidentiary hearings and judicial factfinding reaching beyond the

24

record of conviction and possibly "abridging [the defendant's Sixth Amendment] right to a jury trial." *Id.* at 601; *accord Shepard v. United States*, 544 U.S. 13, 25 (2005) (observing, in context of prior state conviction based on guilty plea, that subsequent judicial factfinding as to "what the defendant and state judge must have understood as the factual basis" implicated "Sixth and Fourteenth Amendments['] guarantee [that] a jury [will] stand[] between a defendant and the power of the State . . . to increase the ceiling of a potential sentence"). In short, constitutional avoidance informed the original categorical-approach mandate. *See Sessions v. Dimaya*, 138 S. Ct. at 1217 (acknowledging that Supreme Court adopted a categorical approach to identification of violent crimes "in part to avoid the Sixth Amendment concerns that would arise from . . . courts' making findings of fact that properly belong to juries" (internal quotation marks and alteration omitted)); *see id.* at 1256 (Thomas, *J.*, with Kennedy, Alito, *JJ.*, dissenting) (observing that "categorical approach was never really about the best reading of the text. . . . [T]his Court adopted that approach to avoid a potential Sixth Amendment problem with sentencing judges conducting minitrials to determine a defendant's past conduct.").

In *James v. United States*, 550 U.S. 192, the Supreme Court extended *Taylor*'s categorical approach to ACCA's residual clause, but doing so required modification. To make a categorical determination of when a statutorily unspecified crime—in that case attempted burglary—posed "a serious potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii), *James* held that "the proper inquiry is whether the conduct encompassed by the elements of the offense, *in the ordinary case*, presents a serious potential risk of injury to another," *James v. United States*, 550 U.S. at 208 (emphasis

14-2641-cr
*United States v. Barrett*

added).  Thus, unlike the traditional categorical approach, which considered how the elements of a crime apply in every case, the ordinary-case standard did not demand "that every conceivable factual offense covered by a statute . . . necessarily present a serious potential risk of injury before the offense can be deemed a violent felony."  *Id.* at 207–08 (rejecting argument that "*all* cases" of attempted burglary must present that risk (emphasis in original)). Dissenting in *James*, Justice Scalia suggested that ACCA's residual clause was unconstitutionally vague as applied to such a hypothetical "ordinary case."  *Id.* at 230 (Scalia, *J.*, dissenting).

Within a decade, that view would command a Supreme Court majority: "We are convinced that the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by judges." *Johnson v. United States*, 135 S. Ct. at 2557.  In reaching this conclusion, the Supreme Court observed, as noted *supra* at 22–23, that it did "not doubt the constitutionality of laws that call for the application of a qualitative standard such as 'substantial risk' to real-world conduct." *Id.* at 2561.  The problem was with the application of that standard "to an idealized ordinary case of the crime."  *Id.*

> Because the elements necessary to determine the imaginary ideal are uncertain both in nature and degree of effect, this abstract inquiry offers significantly less predictability than one that deals with the actual, not with an imaginary condition other than the facts.

*Id.* (internal quotation marks omitted).

The *Johnson* majority, however, declined to "save the residual clause from vagueness" by construing its risk requirement by reference to defendant's actual conduct rather than an idealized case.

14-2641-cr
*United States v. Barrett*

*Id.; see id.* at 2577–80 (Alito, *J.*, dissenting) (urging alternative construction). It explained that (1) the government had not argued for abandonment of a categorical approach in residual-clause cases, *see id.* at 2562; and (2) "good reasons" supported *Taylor's* adoption of a categorical approach, specifically, (a) ACCA's textual emphasis on convictions rather than conduct, and (b) "the utter impracticability of requiring a sentencing court to reconstruct, long after the original conviction, the conduct underlying that conviction," *id.*

*Sessions v. Dimaya* relied on *Johnson* to hold unconstitutionally vague § 16(b)'s residual clause—there being applied to a prior state burglary conviction supporting a deportation order. *See* 138 S. Ct. at 1210–11. The problem, as in *Johnson*, was not that the residual clause identified crimes by reference to a substantial-risk standard but, rather, that a categorical identification of such risk depended on an idealized ordinary case. *Dimaya* observed that there was "'no reliable way' to discern what the ordinary version of any offense looked like," without which "no one could tell how much risk the offense generally imposed." *Id.* at 1214 (quoting *Johnson v. United States*, 135 S. Ct. at 2558). That, in turn, made it impossible to identify a categorical case of "'substantial risk' . . . in a way consistent with due process." *Id.* at 1215–16 (quoting *Johnson v. United States*, 135 S. Ct. at 2561).

As in *Johnson*, dissenters suggested abandoning the constitutionally suspect ordinary-case standard in favor of a conduct-specific inquiry. *See id.* at 1252–56 (Thomas, *J.*, with Kennedy, Alito, *JJ.*, dissenting) ("Instead of asking whether the ordinary case of an alien's offense presents a substantial risk of physical force, courts should ask whether the alien's actual underlying conduct presents a substantial risk of physical force."). A

27

plurality declined to do so, citing four reasons. First, as in *Johnson,* the government had not urged such a construction of the residual clause. To the contrary, at "every step" of the *Dimaya* litigation, the government had "conceded . . . the correctness of [the ordinary-case] construction," and this, despite "the *Johnson* dissent [having] laid out the opposite view." *Id.* at 1217.[11] Second, a conduct-specific construction would "generate its own constitutional questions," specifically, "the Sixth Amendment concerns that would arise from sentencing courts' making findings of fact that properly belong to juries." *Id.* (internal quotation marks omitted).[12] Third, the phrase "by its nature" in § 16(b) "demands a categorical approach" because it "tells courts to figure out what an offense normally—or . . . ordinarily—entails, not what happened to occur on one occasion." *Id.* at 1217–18 (internal quotation marks omitted). Finally, "the utter impracticability" and "daunting difficulties of accurately reconstructing, often many years later, the conduct underlying a conviction" is as great under § 16(b) as under ACCA. *Id.* (internal quotation marks and alterations omitted).

As this summary makes evident, the mandate for a categorical approach to residual definitions of violent crimes has developed in a singular context: *judicial* identification of what crimes (most often, state crimes) of *prior* conviction fit federal definitions of violent

---

[11] While the government's concession informed the Court's decision not to consider a conduct-specific construction of § 16(b)'s residual clause, members of the majority acknowledged that the government could not foreclose such consideration. *See id.* (plurality opinion); *see also id.* at 1232–33 (Gorsuch, *J., concurring in part*) (observing that "normally courts do not rescue parties from their concessions," but expressing openness "to different arguments about . . . proper reading of language like this . . . in another case").

[12] The *Dimaya* plurality identified this constitutional concern despite the fact that the right to a jury trial did not apply to the removal proceeding there at issue, explaining that "§ 16(b) is a criminal statute, with criminal sentencing consequences" and had to be interpreted consistently, whether encountered in a criminal or noncriminal context. *Id.*

14-2641-cr
*United States v. Barrett*

crimes so as to expose a defendant to enhanced penalties or other adverse consequences in *subsequent* federal proceedings. In no case has the Supreme Court considered a residual definition of violent crime that, like § 924(c)(3)(B), defines a predicate offense for a crime of *pending* prosecution.

The distinction is significant. As the cited cases repeatedly emphasize, *post*-conviction, a *judicial* identification of crimes of violence must be categorical because a conduct-specific factual inquiry at that point would raise Sixth Amendment concerns. A categorical approach to residual definitions, however, may not be possible even in that context because, as *Dimaya/Johnson* hold, the "ordinary case" standard devised for that purpose is unconstitutionally vague. *See id.* at 1254 (Thomas, J., with Kennedy, Alito, JJ., dissenting) ("The Court's attempt to avoid the Scylla of the Sixth Amendment steered it straight into the Charybdis of the Fifth. The ordinary-case approach that was created to honor the individual right to a jury is now, according to the Court, so vague that it deprives individuals of due process.").

Section 924(c)(3), however, is not concerned with prior convictions. It pertains only to § 924(c)(1) crimes of *pending* prosecution. This means that a conduct-specific identification of a predicate offense as a crime of violence can be made without raising either of the constitutional concerns that have informed the Supreme Court's categorical-approach jurisprudence. The Sixth Amendment concern is avoided because the trial jury, in deciding whether a defendant is guilty of using a firearm "during and in relation to any crime of violence," 18 U.S.C. § 924(c)(1)(A), can decide whether the charged predicate offense is a crime of violence as defined in § 924(c)(3)(B), *i.e.*, whether the felony offense "by its nature, involves

a substantial risk that physical force against the person or property of another may be used in the course of committing the offense," 18 U.S.C. § 924(c)(3)(B). As for due process, we have already highlighted the Supreme Court's acknowledgement in both *Dimaya* and *Johnson* that a finding of "substantial risk" of physical injury can be made based on "real-world conduct" without any of the vagueness concerns raised by ordinary-case review. *See supra* at 22–23, 26.

Barrett nevertheless maintains that the statutory text precludes conduct-specific application, specifically, the phrase "by its nature," which modifies the felony offenses qualifying as crimes of violence under § 924(c)(3)(B). We are not persuaded. To be sure, the *Dimaya* plurality construed similar language in 18 U.S.C. § 16(b) to "demand[] a categorical approach," citing that as one of four reasons for not abandoning the categorical approach in favor of a conduct-specific inquiry. *Sessions v. Dimaya*, 138 S. Ct. at 1217. But the plurality had already concluded that such a substitution would not achieve constitutional avoidance because a conduct-specific application of § 16(b) to a crime of *prior* conviction would only replace one constitutional concern (vagueness) with another (abridgment of the right to trial by jury). *See id.*

That is not the case here. While constitutional vagueness may preclude categorical application of § 924(c)(3)(B) after *Johnson* and *Dimaya*, a conduct-specific application raises no Sixth Amendment concerns because all relevant factfinding would be made by the trial jury. Thus, constitutional avoidance is not an impossibility here, as the plurality thought it was in *Dimaya*.

We recognize that the word "nature" as used in the phrase "by its nature" is commonly understood to mean "the basic or inherent features, character, or qualities of something," <u>Oxford Dictionary of English</u> 1183 (3d ed. 2010); a "normal and characteristic quality," <u>Webster's Third New International Dictionary</u> 1507 (2002). We also recognize that the "something" whose nature is referenced in § 924(c)(3)(B) is the predicate "offense." But nothing in these definitions indicates whether the offense whose inherent characteristics are to be considered is the generic crime or the particular one charged. In *Nijhawan v. Holder*, 557 U.S. 29 (2009), the Supreme Court recognized that words such as "crime," "felony," and "offense" can be used in both respects, "sometimes refer[ring] to a generic crime . . . and sometimes refer[ring] to the specific acts in which an offender engaged on a specific occasion." *Id.* at 33–34. Thus, while both constructions are reasonable, because a generic—*i.e.*, ordinary-case—construction raises a constitutional vagueness concern, while a conduct-specific approach does not, we heed the principle of constitutional avoidance and conclude that the identification of a crime of violence under § 924(c)(3)(B) is properly made by a jury on a conduct-specific basis.[13]

Nor is a different conclusion warranted because a court would decide whether a predicate offense was a crime of violence under § 924(c)(3)(A), while the jury would decide whether it was a crime of violence under § 924(c)(3)(B). Such divisions are not uncommon when related matters raise questions of both law and fact. *See, e.g.,*

---

[13] *See Chapman v. United States*, No. 1:03-cr-296-6(LMB), 2018 WL 3470304, at *12–13 (E.D. Va. July 19, 2018) (concluding that, after *Dimaya*, constitutional avoidance compels conduct-specific approach to § 924(c)(3)(B)); *see also United States v. Blanco*, 16 Cr. 408 (CS) (S.D.N.Y.) (submitting question of whether predicate offense was crime of violence under § 924(c)(3)(B) to jury).

*United States v. Davis*, 726 F.3d 357, 368 (2d Cir. 2013) (holding that whether crime took place within special maritime and territorial jurisdiction of United States requires two separate inquiries, one "a factual question for the jury," other a "legal question that a court may decide on its own"). Indeed, because the § 924(c)(3) definitions of a crime of violence apply only in the context of a pending § 924(c)(1)(A) prosecution, both definitions are necessarily linked to a jury assessment of whether the alleged predicate crime of violence was, in fact, committed. *See generally Johnson v. United States*, 779 F.3d 125, 129–30 (2d Cir. 2015) (holding that so long as proof is legally sufficient to allow jury to find that predicate § 924(c)(1)(A) offense was committed, defendant need not be separately charged with and convicted of that offense).

Barrett argues that a conduct-specific approach would lead to inconsistent results, with certain crimes being found to satisfy the § 924(c)(3)(B) definition in some cases but not in others. But the distinction would be based on a jury finding of real-world conduct, which properly distinguishes among criminal cases charging the same crime. *See Johnson v. United States*, 135 S. Ct. at 2561 (recognizing that criminal culpability can depend on "matter of degree" (internal quotation marks omitted)). Indeed, it is far preferable for a jury to be able to distinguish between crimes, such as extortion threatening only reputational harm and extortion employing violent, even deadly, force, *see* 18 U.S.C. § 1951(a), than for it to be told, as a matter of law, that neither offense is a violent crime.[14]

---

[14] Conduct-specific jury determinations avoid that feature of the categorical approach most criticized by respected judges: compelling "willful blindness" to known facts. *United States v. Lewis*, 720 F. App'x 111, 120 (3d Cir. 2018) (Roth, *J.*, concurring); *see United States v. Davis*,

Accordingly, because a § 924(c)(3)(B) determination can be made by a trial jury based on a defendant's real-world conduct without raising either due process or Sixth Amendment concerns, *Dimaya* and *Johnson* do not necessarily compel invalidation of Barrett's conviction on Count Two.

## 2. The Failure To Submit the § 924(c)(3)(B) Determination to the Jury in this Case Was Harmless Error

Even if a conduct-specific § 924(c)(3)(B) determination can be made by a jury, that was not done here. Nevertheless, we can affirm Barrett's Count Two conviction because the failure to submit a § 924(c)(3)(B) inquiry to the jury was harmless error beyond a reasonable doubt.

The Supreme Court has held that the "omission of an element" from a jury charge "is subject to harmless-error analysis." *Neder v. United States*, 527 U.S. at 15; *accord United States v. Agrawal*, 726 F.3d 235, 257 (2d Cir. 2013). The relevant inquiry "is whether it appears beyond a reasonable doubt" that the omission "did not contribute to the verdict obtained." *Neder v. United States*, 527 U.S. at 15 (internal quotation marks omitted). In conducting that inquiry, a court does

---

875 F.3d 592, 595 (11th Cir. 2017) (opinion by Carnes, *C.J.*) (observing that categorical approach carries judges "down the rabbit hole . . . to a realm where we must close our eyes as judges to what we know as men and women"); *United States v. Chapman*, 866 F.3d 129, 138 (3d Cir. 2017) (Jordan, *J.*, concurring) (stating that categorical approach "often asks judges to feign amnesia," to "ignore facts already known and instead proceed with eyes shut"); *United States v. Faust*, 853 F.3d 39, 61 (1st Cir. 2017) (Lynch, *J.*, concurring) (observing that categorical approach "can lead courts to reach counterintuitive results"); *United States v. Doctor*, 842 F.3d 306, 313 (4th Cir. 2016) (Wilkinson, *J.*, concurring) (stating that categorical approach has caused judges to "swap[] factual inquiries for an endless gauntlet of abstract legal questions," resulting in their "paradoxically finding even the worst and most violent offenses not to constitute crimes of violence"). Even assuming that this unsatisfactory feature is compelled by the Sixth Amendment for post-conviction judicial identifications of crimes of violence, it need not obtain with respect to jury identifications based on real-world conduct proved at defendant's trial.

14-2641-cr
*United States v. Barrett*

not itself weigh the evidence. It asks only "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." *Id.* at 19. If it could not, then the omission is harmless beyond a reasonable doubt. *See id.*

That is this case. As detailed in the fact section of this opinion, violence was the very hallmark of the charged conspiracy. Each of the eight robberies and three attempted robberies discussed *supra* at 6–9 used, attempted to use, or planned to use physical force. Victims were routinely punched, sometimes with sufficient force to break bones, draw blood, or result in a loss of consciousness. Victims' lives were threatened at knifepoint and gunpoint. Baseball bats were used to shatter the glass windows of a victim's car while he was in it and then to threaten him with physical injury. Guns were not only brandished, but also discharged, in one case point blank to kill a robbery target who had evaded the conspirators' attempt to rob him of cash that he was transporting. This real-world evidence can only support a finding that the charged conspiracy, *by its nature*, involved a substantial risk of the use of physical force. Indeed, no other conclusion is rationally possible. Thus, the failure to submit the § 924(c)(3) inquiry to the jury is necessarily harmless error beyond a reasonable doubt.

Accordingly, we affirm Barrett's conviction on Count Two because (1) following our precedent by reference only to the elements of a conspiracy to commit Hobbs Act robbery, that offense is a categorical crime of violence as defined by § 924(c)(3)(A) together with § 924(c)(3)(B); and (2) § 924(c)(3)(B) is not invalid after *Dimaya/Johnson* because it can reasonably be construed to warrant conduct-specific application by a trial jury, and the trial evidence here

admits no rational finding but that the Hobbs Act robbery conspiracy was a crime of violence under that statutory section.

## CONCLUSION

To summarize, we hold as follows:

1. Our decision in *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), compels the conclusion that the predicate substantive Hobbs Act robberies supporting Barrett's § 924(c)(1)(A) and (j) convictions on Counts Four, Six, and Seven are categorical crimes of violence as defined in 18 U.S.C. § 924(c)(3)(A).

2. The predicate Hobbs Act robbery conspiracy supporting Barrett's § 924(c)(1)(A) conviction on Count Two is a crime of violence because,

> a. our precedent recognizes a conspiracy to commit a categorical crime of violence as itself a categorical crime of violence, and we can apply that precedent here to § 924(c)(3)(A) together with § 924(c)(3)(B) by reference only to the elements of a Hobbs Act robbery conspiracy;

> b. § 924(c)(3)(B) is not unconstitutionally vague after *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *Johnson v. United States*, 135 S. Ct. 2551 (2015), because it can be construed to warrant conduct-specific application by the jury that decided Barrett's § 924(c)(1)(A) guilt, thereby avoiding both the due process and Sixth Amendment concerns noted in those cases; and

> c. although no § 924(c)(3)(B) inquiry was submitted to the jury in this case, the error was harmless beyond a reasonable

14-2641-cr
*United States v. Barrett*

doubt because the record evidence of beatings, shootings, and murder in the course of the robbery conspiracy admits no other rational finding but that the charged conspiracy was a crime of violence under that statutory definition.

Accordingly, for the reasons stated in this opinion, as well as the summary order filed today, we AFFIRM the judgment of conviction.