UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

    -v-

AKAYED ULLAH,
                  Defendant.

18-cr-16 (RJS)
OPINION AND ORDER

---

RICHARD J. SULLIVAN, Circuit Judge:

On January 10, 2018, a grand jury returned an indictment of Defendant Akayed Ullah containing six counts:

(1)    Provision of material support and resources to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B;

(2)    Use of a weapon of mass destruction, in violation of 18 U.S.C. § 2332a(a)(2)(A)–(D);

(3)    Bombing a place of public use and a public transportation system, in violation of 18 U.S.C. § 2332f(a)(1)(A)–(B), 2332f(b)(1)(B), and 2332f(b)(1)(E);

(4)    Destruction of property by means of fire or explosive, in violation of 18 U.S.C. § 844(i);

(5)    Terrorist attack against mass transportation systems, in violation of 18 U.S.C. § 1992(a)(2), (a)(4)(B), (a)(7), (a)(10), (b)(1), and (c)(1); and

(6)    Use of a destructive device during and in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) and (c)(1)(B)(ii).

(Doc. No. 6 (the "Indictment").)  The parties proceeded to trial on all counts, although the government abandoned one of its bases for liability under Count Five, and on November 6, 2018, a jury found Defendant guilty of all six counts charged in the Indictment.  On December 6, 2018, Defendant moved, pursuant to Federal Rule of Criminal Procedure 29(c), for a judgment of

acquittal.  (Doc. No. 73.)  Although Defendant's papers focus principally on his convictions for the offenses charged in Counts One and Five, his motion is directed at all six counts of conviction.[1] (*See* Doc. No. 74.)  On July 25, 2019, the Court directed the parties to submit supplemental briefing in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).  (Doc. No. 86.)  The Court is now in receipt of those submissions, in which Defendant focuses on his conviction for the offense charged in Count Six.  (*See* Doc. Nos. 87, 90, 91.)  In the interim, the United States Court of Appeals for the Second Circuit has issued a series of opinions that clarify what constitutes a "crime of violence" under § 924(c).  For the reasons set forth below, Defendant's motion is DENIED in its entirety.

## I. BACKGROUND

### A. Facts[2]

In the fall of 2017, Defendant constructed an improvised explosive device ("IED") at his home in Brooklyn.  (*See* Tr. 298:2–309:12.)  On the morning of December 11, 2017, he strapped the IED to his chest, donned an overcoat obscuring the bomb from view, left his home, and rode the subway from Brooklyn to the Times Square-42nd Street/Port Authority Bus Terminal subway station complex.  (Tr. 218:24–219:22.)  While on his way to Midtown, he posted a message to his Facebook account that taunted the President of the United States for failing to keep America safe and announced that he was acting on behalf of the Islamic State of Iraq and al-Sham ("ISIS").

---

[1] In this regard, Defendant's papers resemble his Rule 29 motion at the close of the government's case, in which the defense moved "to dismiss all counts in the indictment because the government has failed to meet its burden for each count" (Doc. No. 64 at 244), but, as here, focused exclusively on Counts One and Count Five in the arguments put forth on the record before the Court.

[2] The following facts are drawn from the Trial Transcript ("Tr.") (Doc. Nos. 58, 60, 62, 64, 66, 68, and 70) and from the trial exhibits.  For purposes of this Order, all facts are stated in the light most favorable to the government.  *See United States v. Masotto*, 73 F.3d 1233, 1241 (2d Cir. 1996) (holding that a court reviewing a conviction for sufficiency of the evidence "must credit every inference that could have been drawn in the government's favor" (internal quotation marks omitted)).

(Tr. 219:23–220:14.)  At about 7:15 a.m., Defendant arrived at the Port Authority Bus Terminal section of the station (which is served by the A, C, and E subway lines), disembarked, and walked to the underground hallway connecting those lines to the Times Square portion of the station complex.  (Tr. 345:9–351:20.)  At about 7:20 a.m., in the middle of rush hour with commuters on all sides, Defendant connected two wires in his pocket, completing the IED's circuit and detonating the IED.  (Tr. 237:20–23; 230:14–16.)  Defendant, who was injured but not killed, was promptly apprehended by law enforcement authorities while still wearing remnants of the IED.  (Tr. 65:20–72:11.)  Fortunately, no one else was seriously injured by the blast.  During interrogation at Bellevue Hospital (Tr. 88:20–22), Defendant informed police that he acted "for the Islamic State."  (Tr. 212:7–11; *see also* Tr. 226:20–227:23.)

### B.  Procedural History

Defendant made his Rule 29(a) motion at the close of the government's case.  (Tr. 668:8–15.)  After hearing arguments from the parties, the Court denied Defendant's motion (Tr. 772:8–9) and charged the jury.  Following the jury's verdict, and at Defendant's request, the Court set a briefing schedule for post-trial motions.  Defendant filed the instant motion under Rule 29(c) on December 6, 2018.  (Doc. No. 74 ("Mem.").)  The government opposed the motion on December 20, 2018 (Doc. No. 75 ("Opp'n")), and the motion was fully briefed on January 11, 2019 (Doc. No. 76 ("Reply")).  Prior to the issuance of a decision in this matter, however, the Supreme Court issued an opinion in *United States v. Davis*, 139 S. Ct. 2319 (2019).  In light of that opinion, the parties agreed that supplemental briefing was warranted.  (Doc. No. 85.)  Accordingly, the Court adjourned Defendant's sentencing and set a new briefing schedule whereby Defendant filed his supplemental memorandum on September 13, 2019 (Doc. No. 87), the government responded on October 22, 2019 (Doc. No. 90), and Defendant submitted his reply on November 5, 2019 (Doc. No. 91).  Since then, Defendant has requested, with the government's consent, numerous

adjournments of his sentencing in light of the COVID-19 pandemic, which defense counsel explained impeded their ability to meet or communicate with Defendant to prepare for sentencing. (*See, e.g.*, Doc. Nos. 96, 98, 100.)

## II.  LEGAL STANDARD

"Rule 29(c)(2) states that 'if the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal'" where the evidence was insufficient to sustain a conviction. *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006) (quoting Fed. R. Crim. P. 29(c)(2)) (brackets omitted).   "A defendant challenging a conviction based on insufficient evidence bears a heavy burden."  *United States v. Aina-Marshall*, 336 F.3d 167, 171 (2d Cir. 2003).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  In this analysis, the court does not assess witness credibility, resolve inconsistent testimony against the verdict, or otherwise weigh the significance of the evidence.  *See United States v. Autuori*, 212 F.3d 105, 114 (2d Cir. 2000). Further, the court is to apply this test to "the totality of the government's case and not to each element, as each fact may gain color from others," and draw "[a]ll permissible inferences . . . in the government's favor." *United States v. Guadagna*, 183 F.3d 122, 129–30 (2d Cir. 1999).  "[T]he court may enter a judgment of acquittal only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'"  *Id.* at 130 (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)).

## III.  DISCUSSION

### A.  Count One

Defendant first challenges the legal sufficiency of his conviction on Count One, which charged him with providing "material support [or] resources" to ISIS, a designated foreign terrorist

organization.  (Mem. at 1–11.)  The government argued at trial that Defendant was guilty of providing two types of material support to ISIS:  "personnel" and "services."  The jury found Defendant guilty of providing material support to ISIS, but was not asked to identify whether it accepted the "personnel" theory, the "services" theory, or both.  Accordingly, Defendant now argues that both theories are legally defective and that, if either fails, his conviction on Count One must be vacated.  Because the Court finds that both of the theories submitted to the jury were legally proper, and that the record contains sufficient evidence to permit a rational jury to convict Defendant under either theory, Defendant's Rule 29 motion is denied as to Count One.

1.  Personnel

Defendant first argues that he was improperly convicted of providing "personnel" – specifically, himself – to ISIS because his conduct is exempted from 18 U.S.C. § 2339B(h).  That subsection provides:

> No person may be prosecuted under this section in connection with the term "personnel" unless that person has knowingly provided, or attempted to provide . . . a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control . . . . *Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.*

18 U.S.C. § 2339B(h) (emphasis added).  The Court incorporated § 2339B(h) into its instructions to the jury, and the jury returned a guilty verdict.  (*See* Tr. 925:16–22.)  Nevertheless, Defendant now argues that because he did not engage in two-way communications with ISIS, he can only have acted "entirely independently" of the group (rather than at its "direction or control") and cannot be found guilty of providing "personnel" to the group.  (*See* Mem. at 2–8; Reply at 2–3.)

Defendant overreads the statutory exception for conduct undertaken "entirely independently of the foreign terrorist organization."  (*See* Mem. at 2 (quoting 18 U.S.C. § 2239B(h).)  His proposed two-way-communication requirement is inconsistent with (1) the text

of § 2339B(h) (which does not require coordination, but merely direction); (2) the common meaning of the word "direction" (which refers to a command from one person to another, not a two-party discussion of options, *see Direction*, Black's Law Dictionary (10th ed. 2014)); and (3) the manner in which international terrorist organizations, particularly ISIS, actually operate (Tr. 365:5–366:5). Significantly, Defendant cites no authority in support of his theory that a person must have communicated with a foreign terrorist organization in order to act at that organization's "direction." (*See* Tr. 697:5–20.) Instead, the limited case law that exists supports the government's position. *See United States v. Jama*, 217 F. Supp. 3d 882, 892 (E.D. Va. 2016) ("Congress . . . did not intend to limit [§] 2339B's application to situations where prohibited support is delivered to designated or recognized leaders or to those who operate under some identifiable command and control structure. Rather, Congress intended to reach all persons who act on behalf of an FTO to further its goals and objectives in significant ways."). The Court therefore rejects Defendant's argument as a matter of law.

Further, to the extent that Defendant argues that the evidence was insufficient to convict him of providing "personnel" to ISIS, he is mistaken. The record evidence, taken in the light most favorable to the government, amply establishes that Defendant acted at ISIS's direction by heeding the call of the organization's propaganda and recruiting materials. Defendant informed arresting officers that he had viewed the video "Flames of War II" (Tr. 225:21–226:10), which encourages attacks similar to the one he carried out at the Port Authority (Tr. 371:22–372:8). The jury also saw several ISIS propaganda videos recovered from Defendant's computer and heard testimony from the government's expert, Dr. Aaron Zelin, explaining those videos and how ISIS used them to inspire attacks to advance its cause. (Tr. 372:22–380:3.) The jury also heard testimony about Defendant's pre-attack Facebook post, which Dr. Zelin explained contained language that serves

6

as an ISIS "rallying cry." (Tr. 380:18–382:2.) Finally, and perhaps most importantly, Defendant told police that he carried out the attack "for the Islamic State." (Tr. 212:10–11.) Accordingly, the record evidence is more than sufficient to support the jury's conclusion that Defendant provided "personnel" to ISIS.

Defendant's Rule 29 motion also challenges the Court's jury instruction on Count One. Specifically, Defendant asserts that he cannot have properly been convicted of "attempt[ing] to work under the 'direction or control' of an organization if the organization is not a participant in the transaction and does not even know the person." (Mem. at 6.) But as noted above, § 2339B(h) does not require two-way communication between a defendant and a foreign terrorist organization. Indeed, although the cases upon which the government relies deal with defendants who attempt to provide themselves to foreign terrorist organizations by traveling to that territory (*see* Opp'n at 8), the statute neither requires that a defendant provide "personnel" for ongoing group membership (as Defendant suggests) nor excludes the possibility that a defendant could provide "personnel" for a single suicide bombing. Thus, the jury could have permissibly concluded that Defendant attempted to provide himself to ISIS by carrying out a suicide attack in response to the directives in the group's propaganda videos. The Court therefore finds that the jury was properly instructed on the government's attempt theory.

## 2. Services

Defendant next challenges the Court's instruction regarding the providing of "services" in support of a terrorist organization. The Court instructed the jury that:

> A person provides or attempts to provide services as that term is defined in the statute when a person performs work commanded or paid for by another or done for the benefit of another, here ISIS.

> Only work performed in coordination with, at the direction of, or for the benefit of ISIS meets the definition of service. It's for you to decide whether or not the government has proven beyond a reasonable doubt that ISIS invited conduct such

as the conduct alleged here, whether the defendant carried out the conduct alleged here, and, if you find that he did, whether the defendant was motivated by such an invitation.

If you find that ISIS did in fact invite its followers or sympathizers to engage in such conduct and if you find that the defendant engaged in conduct that was motivated in whole or in part by such an invitation, that would be sufficient to meet the definition of services in the statute.

(Mem. at 10 (quoting Tr. 924:24–925:15) (emphasis omitted).)

Defendant argues that, under *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010), a "service" must be performed "in coordination with or under the direction of" ISIS, and that the Court's instruction improperly permitted the jury to convict Defendant on the basis of an "entirely independent act undertaken" to advance ISIS's goals and objectives. (Mem. at 4, 10–11; Reply at 2.) But while the Supreme Court in *Holder* recognized that the term "service" includes "advocacy performed in coordination with, or at the direction of, a foreign terrorist organization" and excludes "independent advocacy," 561 U.S. at 24, the Supreme Court also defined "service" and "concerted activity" as "an act done *for the benefit or at the command* of another." 561 U.S. at 23–24 (emphasis added) (quoting Webster's Third New International Dictionary 2075 (1993)); *see also Jama*, 217 F. Supp. 3d at 892 (noting that, with § 2339B, "Congress intended to reach all persons who act *on behalf of an FTO to further its goals* and objectives in significant ways" (emphasis added)). The Court appropriately incorporated that definition into its instructions, and required the jury to find that Defendant had not acted on his own by considering whether (1) ISIS "invited" its followers to carry out attacks like Defendant's, and (2) Defendant acted in response to such an invitation. (*See* Tr. 925:11–15.) Further, though Defendant now asserts that he "built this device entirely on his own to further [ISIS's abstract political] goals" (Reply at 2), the record evidence readily supports the conclusion that Defendant carried out the attack as directed by ISIS in its propaganda videos for the express purpose of benefiting ISIS (*see, e.g.*, Tr. 437:24–438:1).

Defendant's challenge to the government's "service" theory therefore fails.  Because the Court concludes that the jury was properly instructed as to both the "personnel" and "services" prongs of § 2339B, and because the evidence in the record, viewed in the light most favorable to the government, is plainly sufficient to support the jury's verdict, Defendant's motion for a judgment of acquittal as to Count One must be denied.

## B.  Count Five

Defendant likewise challenges his conviction on Count Five, which, as a general matter, charged Defendant with committing a terrorist attack against mass transportation systems in violation of 18 U.S.C. § 1992.  Although the indictment's charging language tracked three specific subsections of the statute, the government proceeded to trial on only two of those subsections – (1) § 1992(a)(2), which subjects a person to criminal liability where he "places any . . . destructive device in, upon, or near . . . a mass transportation vehicle with intent to endanger the safety of any person, or with a reckless disregard for the safety of human life," and (2) § 1992(a)(7), which subjects to criminal liability a person who "commits an act, including the use of a dangerous weapon, with the intent to cause death or serious bodily injury to any person who is on [certain] property" used in the operation or support of a mass transportation vehicle.[3]  As reflected by the verdict form, the jury determined that Defendant violated both subsections.

Defendant makes three principal arguments as to Count Five, the first two of which relate to § 1992(a)(2).  First, Defendant argues that the evidence was legally insufficient to prove that he "placed" a bomb in a mass transportation vehicle because the IED was strapped to his person.

---

[3] Section 1992(a) also requires that the person act knowingly and without lawful authority or permission, and that the person do so in certain circumstances outlined in § 1992(c).  Neither of these requirements is disputed here.

Second, he asserts that the government constructively amended the Indictment in pursuing its theory that he did.

Finally, as to § 1992(a)(7), Defendant does not dispute the jury's finding of guilt under that subsection.   He  merely  maintains  that  his  conviction  under  § 1992(a)(7)  cannot  sustain  a sentencing enhancement pursuant to § 1992(b)(1).  But this argument is of no moment unless the Court were to vacate the jury's finding that Defendant violated § 1992(a)(2), which Defendant does not dispute constitutes a basis for the sentencing enhancement.   Accordingly, because the Court  upholds  Defendant's  conviction  under  § 1992(a)(2),  it  need  not  address  his  § 1992(7) sentencing challenge here.

## 1.  Sufficiency of the Evidence

Defendant first challenges the government's contention that Defendant "placed" his bomb on a subway car when he rode on the train with the bomb attached to his body but with its circuit unconnected. (Mem. at 12–15.)  Specifically, Defendant argues that the facts adduced at trial show that he "carried" or "transported" the bomb on the subway, but did not "place" it, and that if Congress had intended § 1992 to cover carrying or transporting a bomb (conduct which Defendant admits falls within the scope of 18 U.S.C. § 924(c)(1)), it would have used exactly those words. In essence, Defendant suggests that a jury could only have found him guilty of "placing" the bomb on the subway if he had taken it off, put it down, and then either left it behind or immediately detonated it.  (Mem. at 12–13, Tr. 734:23–735:2.)  The Court rejected this argument during trial (Tr. 802:5–22), and does so again now.

As the Court observed previously, Defendant's argument has some intuitive appeal.  But while it is true that Congress chose to use the word "place" – which means "[t]o put or set (in a particular place, spot, or position); to station, position," *Place*, Oxford English Dictionary (3d ed. 2006) – rather than "carry" and "transport" – which generally relate to the transportation, and not

the placement, of items, *see Muscarello v. United States*, 524 U.S. 125, 128–32 (1998) – the nature of Defendant's explosive device collapses the distinction between carriage and placement. As the government points out in its brief, the evidence at trial established that Defendant made himself an integral part of his explosive device, which was attached to his chest and was designed to detonate when Defendant connected a circuit in his pocket. (*See* Opp'n at 14–15.) Accordingly, the only way for Defendant to "put" this particular bomb into position was to stand in that position himself. The government proved that Defendant rode the subway from Brooklyn to Manhattan with his improvised explosive device attached to his person. There is certainly nothing in the statutory language to suggest that Congress intended to distinguish suicide bombers from those who abandoned explosive devices prior to detonating them. The Court therefore has no difficulty concluding that there was sufficient evidence to support a finding that Defendant "placed" the bomb on a train.

## 2. Constructive Amendment

Defendant next contends that the government constructively amended the Indictment when it argued to the jury that Defendant "placed" his bomb on the subway by riding the train with it attached to his person. (Mem. at 15–23.) Defendant insists that the government's jury argument was contradicted by Count Five's "to wit" clause (*see* Mem. at 20), which, in his view, alleged that he placed the bomb *only* when he "detonated and attempted to detonate [the bomb] in the vicinity of the Port Authority Bus Terminal" (*id.* at 19 (quoting Indictment ¶ 5)). Defendant argues that because the "to wit" clause describes only conduct that occurred at the Port Authority Bus Terminal, he cannot have properly been convicted for carrying his bomb on the subway train – conduct which took place elsewhere. (*Id.* at 13–14.) Defendant thus maintains that the government impermissibly broadened the charges against him in violation of the Fifth Amendment. (*Id.* at 18).

"To prevail on a constructive amendment claim, a defendant must demonstrate that either the proof at trial or the trial court's jury instructions so altered an essential element of the charge that, upon review, it is uncertain whether the defendant was convicted of conduct that was the subject of the grand jury's indictment." *United States v. Frank*, 156 F.3d 332, 337 (2d Cir. 1998). A constructive amendment is a *per se* violation of a defendant's constitutional rights. *United States v. Salmonese*, 352 F.3d 608, 621 (2d Cir. 2003). However, "not all modifications constitute constructive amendments." *Id.* at 621. The Second Circuit "has 'consistently permitted significant flexibility in proof, provided that the defendant was given *notice* of the *core of criminality* to be proven at trial.'" *United States v. D'Amelio*, 683 F.3d 412, 417 (2d Cir. 2012) (quoting *United States v. Rigas*, 490 F.3d 208, 228 (2d Cir. 2007) (emphasis added in *Rigas*). "'Where charges are constructively narrowed or where a generally framed indictment encompasses the specific legal theory or evidence used at trial,' there is no constructive amendment." *Salmonese*, 352 F.3d at 620 (quoting *United States v. Wallace*, 59 F.3d 333, 337 (2d Cir. 1995)).

The theory of liability under § 1992(a)(2) that the government argued to the jury at trial – that Defendant "placed" the bomb on the subway when he boarded the car and rode to Port Authority – is plainly covered by the broad language of the Indictment, which charges Defendant with "plac[ing] and attempt[ing] to place" his bomb "in, upon, and near a mass transportation vehicle" on December 11, 2017. (Indictment ¶ 5.) Defendant's attempt to graft a limitation from the "to wit" clause of Count Five – which follows nearly a page of statutory language alleging violations under three subsections of § 1992(a) – is unavailing. Read in context, the "to wit" clause appears to relate only to the alleged subsection violation immediately preceding the "to wit"

12

language, which is for a violation under § 1992(a)(7).[4]  Significantly, the "to wit" language is set off from that subsection violation only by a comma, whereas the other subsections' allegations are separated from each other by semicolons.  (Indictment ¶ 5.)

Further, even if the government meant for the "to wit" clause to apply to all three of the subsections of § 1992(a) referenced in Count Five, the law is clear that the inclusion of a "to wit" clause in an indictment does not bind the government to prove the exact facts set out therein. *United States v. Bastian*, 770 F.3d 212, 221–22 (2d Cir. 2014).  Since Defendant's placement of the bomb on his person, and his placement of his person on the train while *en route* to the Port Authority Bus Terminal, occurred on the date identified in the Indictment and was part of a "single course of conduct" to commit the bombing, *D'Amelio*, 683 F.3d at 421–22, the government was not required to pinpoint the exact moment within that course of conduct that comprised the charged crime.  *See id.* at 421 (finding no constructive amendment where the course of conduct within which the charged offense fell "had a single, ultimate purpose," or "core of criminality" (internal quotation marks omitted)).  Accordingly, the Court finds that there was no constructive amendment as to subsection 1992(a)(2) and no risk that the jury convicted Defendant for "a functionally different crime" than the one charged in the Indictment.  *Id.* at 423.

## C.  Count Six

In his supplemental briefing, Defendant seeks to overturn his conviction on Count Six, arguing that, in light of the Supreme Court's decision in *United States v. Davis*, 139 S. Ct. 2319

---

[4] The allegation in Count Five preceding the "to wit" clause alleges that Defendant "committed, and attempted to commit, an act, including the use of a dangerous weapon, with the intent to cause death or serious bodily injury to persons who were on or in a garage, terminal, structure, track, electromagnetic guideway, supply, and facility used in the operation of, and in support of the operation of, a mass transportation vehicle, which mass transportation vehicle was carrying passengers and employees at the time of the offense, to wit, [Defendant] detonated and attempted to detonate an IED in the vicinity of the Port Authority Bus Terminal in New York, New York, which terminal was then in use by subway cars and buses that were carrying passengers and employees at the time of the offense."  (Indictment ¶ 5.)

(2019), he was not convicted of a valid predicate "crime of violence," which is required to sustain a conviction under 18 U.S.C. § 924(c)(1)(A) and (c)(1)(B)(ii).  (Doc. No. 87 at 2–3.)  In *Davis*, the Supreme Court concluded that the "residual clause" – one of the two bases for determining whether a predicate offense is a "crime of violence" within that statute – was unconstitutionally vague.  *See Davis*, 139 S. Ct. at 2336.  That clause provided that a crime of violence is one which, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."  18 U.S.C § 924(c)(3)(B).  The remaining "elements" or "force" clause provides that a predicate offense is a crime of violence if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ."  *Id.* § 942(c)(3)(A).  The categorical approach is used to determine whether an offense falls within this clause.  *See United States v. Barrett*, 937 F.3d 126, 129 (2d Cir. 2019).[5]

Prior to trial in this matter, the Court determined, as a matter of law, that Counts Three and Five were categorically crimes of violence under the force clause (Doc. No. 36 at 6), and instructed the jury accordingly (Tr. 947: 9–14 ("I instruct you that Counts Three and [F]ive qualify as crimes of violence within the meaning of [Count Six's requirement that the government prove beyond a reasonable doubt that the defendant committed a crime of violence].").)  In light of then-binding case law in this Circuit, the Court also asked the jury to determine whether the "residual clause" covered any counts on which the jury found Defendant guilty, instructing them that "[i]f you have found the defendant guilty of any of Counts One through Five, you must next determine whether

---

[5] "Under the categorical approach, courts identify the minimum criminal conduct necessary for conviction under a particular statute."  *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018) (internal quotation marks omitted).  A court does not consider the particular facts of a case, but rather the elements of the offense.  *Id.* For a defendant to show that a predicate offense is *not* a crime of violence, "there must be a realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not constitute a crime of violence."  *Id.* at 56 (internal quotation marks omitted).

that offense or offenses involved a substantial risk that physical force might be used against the person or property of another." (Tr. 947: 21–24.)

Defendant now argues that, after *Davis*, the Court must set aside the jury's findings that Counts Two, Three, Four, and Five were crimes of violence under the residual clause. (Doc. No. 87 at 2.) He further contends that none of the convictions fall within the force clause, thereby challenging the Court's determination that Counts Three and Five constituted crimes of violence as a matter of law under that provision. (*Id.* at 4.) Moreover, Defendant argues that his convictions cannot be valid predicate crimes of violence for the additional reason that the jury might have convicted him for attempted, rather than completed, conduct. (*Id.* at 13.) In Defendant's view, the minimum conduct necessary to be convicted of an attempt to commit each of the charged offenses would not require as an element the use, attempted use, or threatened use of physical force, and therefore would not categorically constitute a crime of violence under the force clause. (*Id.* at 14.)

There is no dispute that the residual clause is now invalid; consequently, the jury's findings that certain offenses qualified as crimes of violence under that clause no longer make those offenses valid predicates for the Count Six conviction. Additionally, the government concedes that it "is not arguing that Counts One, Two, or Four qualify as crimes of violence after *Davis*." (Doc. No. 90 at 1 n.1.) The core of the parties' dispute therefore concerns whether Counts Three and Five constitute crimes of violence under § 924(c)'s force clause. Because the Court remains convinced that the offense charged in Count Three – whether attempted or completed – is a categorical crime of violence under the force clause, it upholds Defendant's conviction on Count Six without addressing whether Count Five also is a crime of violence.

15

Section 2332f(a), the crime charged in Count Three, criminalizes "deliver[ing], plac[ing], discharg[ing], or detonat[ing] an explosive or other lethal device in, into, or against a place of public use, a state or government facility, a public transportation system, or an infrastructure facility . . . with the intent to cause death or serious bodily injury, or with the intent to cause extensive destruction of such a place, facility, or system, where such destruction results in or is likely to result in major economic loss."  Defendant, appearing to recognize the futility in arguing that this crime does not have "as an element the use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(c)(3)(A), instead argues that the minimum conduct necessary to commit the offense does not categorically involve the use of force against *the person or property of another*," (Doc. No. 87 at 12 (quoting 18 U.S.C. § 924(c)(3)(A) (emphasis added)).  Defendant contends that § 2332f(a) hypothetically would extend to a situation where someone intended only to injure himself in a public place, such as an attempted suicide on the National Mall.  But the categorical approach requires a "realistic probability, not a theoretical possibility, that the statute at issue could be applied to conduct that does not constitute a crime of violence," *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018) (internal quotation marks omitted), and there is no reason whatsoever to believe that any person ever has been or would be charged with a violation of § 2332f(a) for "detonat[ing] an explosive or other lethal device in . . . a place of public use . . . with the intent to cause death or serious bodily injury" only to himself, 18 U.S.C. § 233f(a)(1)(A).  Defendant's theory here amounts to little more than an exercise of "legal imagination," *Hill*, 890 F.3d at 56, and need not be seriously entertained.  After all, "the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy."  *Id.*

Nor is the Court persuaded that an attempt to commit the offense charged in Count Three could be committed without the use, attempted use, or threatened use of violence.  To date, the

Second Circuit has not yet determined whether and when an attempt may constitute a crime of violence, although the issue of whether attempted Hobbs Act robbery is a crime of violence under the . . . force clause has been raised in several appeals now pending" before the Circuit. *United States v. Minaya*, No. 01-cr-619 (VM), 2020 WL 6701085, at *1 (S.D.N.Y. Nov. 13, 2020) (internal quotation marks omitted)).   However, persuasive authority indicates that attempted crimes of violence, including murder, will satisfy the force clause. *See United States v. Praddy*, 729 F. App'x 21, 23–24 (2d Cir. 2018); *United States v. Scott*, 681 F. App'x 89, 95 (2d Cir. 2017); *United States v. Samuels*, No. 18-cr-306 (ER), 2020 WL 5517772, at *6 (S.D.N.Y. Sept. 14, 2020) (collecting cases finding that attempted Hobbs Act robbery qualifies as a crime of violence under the force clause); *Mayes v. United States*, No. 12-cr-0385 (ARR), 2019 WL 6307411, at *3 (E.D.N.Y. Nov. 25, 2019) (collecting cases finding that attempted murder is a crime of violence under the force clause).   Other circuits have also recently concluded that an attempt to commit a crime of violence satisfies the force clause, which by definition includes the *attempted* use of physical force. *See United States v. St. Hubert*, 909 F.3d 335, 351 (11th Cir. 2018) ("Like completed Hobbs Act robbery, attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c)(3)(A)'s use-of-force clause because that clause expressly includes '*attempted use*' of force."), *abrogated on other grounds by Davis*, 139 S. Ct. 2319; *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017).

This conclusion is reasonable.   Under federal law, "a person is guilty of an attempt to commit a crime if he or she (1) had the intent to commit the crime, and (2) engaged in conduct amounting to a substantial steps towards the commission of the crime." *United States v. Thrower*, 914 F.3d 770, 776 (2d Cir. 2019) (internal quotation marks and alterations omitted).   Defendant argues that the minimum conduct necessary to take a "substantial step" does not necessarily

17

involve the attempted use of force.  (Doc. No. 87 at 14–16.)  But he does not point to any real possibility that preparations to place a bomb in a public place with the intent to cause death, serious bodily injury, or extensive destruction would not involve an attempt to use physical force, and the Court cannot foresee such a situation.  Thus, Defendant's "attempt" argument is without merit. Therefore, in light of the fact that *Davis* and its progeny have no bearing on whether Count Three satisfies the "force" clause, it remains a valid predicate for Count Six.

### D.  Counts Two, Three, and Four

Defendant purports to challenge his convictions on Counts Two, Three, and Four in his post-trial brief by relying on the Rule 29 motion he made as to all counts at trial.  (Mem. at 1 (citing Tr. 772).)  However, Defendant did not actually present arguments about Counts Two, Three, and Four when he made his motion, and he presents none now.  Accordingly, Defendant's Rule 29 motion will be denied as to all remaining counts.  *See United States v. Rivera*, 388 F.2d 545, 548 (2d Cir. 1968) (holding that because "[t]he specification of grounds in [a] motion is an indication that counsel has evaluated the record and has these particular reasons for his motion," a failure to object to venue in a motion for acquittal "made on specified grounds" waived the venue objection).

### IV.  CONCLUSION

For the foregoing reasons, Defendant's motion for a judgment of acquittal is DENIED as to all counts of conviction.  The Clerk of Court is respectfully directed to terminate the motion pending at Doc. No. 73.

Dated:       December 31, 2020
             New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation